## Robert Gaylord

*v.*

## The Sanitary District of Chicago.

*Opinion filed October 26, 1903.*

1. Constitutional law—*the Mills and Millers act of 1872 is void.* The Mills and Millers act of 1872, (Rev. Stat. 1874, p. 701,) in so far as it authorizes condemnation of private property for the purposes of public mills and machinery other than public grist mills, is void, as permitting the taking of property for private use.

2. Same—*what necessary to constitute a public use.* To constitute such a public use as will justify the taking of private property, the contemplated improvement must be one which the public, to some extent, have a right to use, and not one which is merely a benefit to the public.

3. Eminent domain—*property cannot be condemned for a public and a private use.* Authority to condemn private property for public use does not justify the taking of such property for a public and also a private use.

Appeal from the Circuit Court of Will county; the Hon. R. W. Hilscher, Judge, presiding.

Charles A. Munroe, (Thomas A. Moran, of counsel,) for appellant:

The Mills and Millers act is valid, and authorizes the petitioner to acquire all the property described in the petition. *Head* v. *Amoskeag Manf. Co.* 113 U. S. 9; *Olmstead* v. *Camp,* 33 Conn. 532; *Fuller* v. *Chicopee Manf. Co.* 82 Mass. 43; *Pratt* v. *Lamson,* 84 id. 275; *Lowell* v. *Boston,* 111 id. 454.

Mill acts are interpreted broadly. Angell on Waters, (6th ed.) sec. 488.

The improvement of navigation is a public use. *Salt Co.* v. *Brown,* 7 W. Va. 198; *Hazen* v. *Essex Co.* 12 Cush. 475; *In re Burns,* 155 N. Y. 23; *Calking* v. *Baldwin,* 4 Wend. 668.

Whether the power of eminent domain shall be put in motion for any particular purpose, and whether the exigencies of the occasion and the public welfare require or justify its exercise, are questions which rest entirely with the legislature. When the use is public, the neces-

sity or expediency of appropriating any particular property is not a subject of judicial cognizance. 1 Lewis on Eminent Domain, (2d ed.) sec. 238; *Railroad Co.* v. *Town of Lake,* 71 Ill. 333; *Schuster* v. *Sanitary District,* 177 id. 627; *Railway Co.* v. *Railroad Co.* 97 id. 506; *Smith* v. *Railroad Co.* 105 id. 511; *Railroad Co.* v. *Wiltse,* 116 id. 449; *Dock Railroad Co.* v. *Railroad Co.* 32 N. J. Eq. 755.

The encouragement of mills has always been a favorite object with the legislatures of the various States, and though the reason of it may have ceased, the favor continues. *Woolen Mill Co.* v. *Upham,* 22 Mass. 292.

It may be objected that there is no necessity for condemning this particular property because some other location might be made or other property obtained by agreement; but this objection is unavailing, except as especially restricted by the legislature. Those invested with power of eminent domain for a public purpose can make their own location, according to their views of what is best, and their discretion cannot be interfered with by the court. 2 Lewis on Eminent Domain, (2d ed.) sec. 393.

The power to construct a grist mill and improve the navigation of a river rests on the public use,—not on the disposition of the water power incidentally developed. *Wisconsin* v. *Eau Claire,* 40 Wis. 542; 37 id. 400; *Slingerland* v. *Newark,* 54 N. J. L. 62.

When once the character of the use is found to be public, the court's inquiry ends and the legislative policy is left supreme, although it appears that private ends will be advanced by the public user. *Railroad Co.* v. *Dix,* 109 Ill. 237; *Railroad Co.* v. *Wiltse,* 116 id. 449; *Railroad Co.* v. *Petty,* 57 Ark. 359; *DeCamp* v. *Railway Co.* 47 N. J. L. 43; *Dock Railroad Co.* v. *Railroad Co.* 32 N. J. Eq. 755.

The defendant cannot question the intention of the petitioner to devote the property to the public use specified in the petition. *Slingerland* v. *Newark,* 54 N. J. L. 62; *Railroad Co.* v. *Railroad Co.* 56 Ind. 87; *State* v. *Kenjan,* 51 Ind. 142; Mills act, sec. 5.

204—37

JOHN P. WILSON, and HENRY S. ROBBINS, for appellee:

Private property can only be taken for a public use. Const. of 1870, art. 2, sec. 13; *Nesbitt* v. *Trumbo*, 39 Ill. 110; *Jordan* v. *Woodward*, 40 Me. 317.

The Illinois Mills act, so far, at least, as it authorizes condemnation for "other public machinery," is unconstitutional. *Ryerson* v. *Brown*, 35 Mich. 333; *Loughbridge* v. *Harris*, 42 Ga. 500; *Tyler* v. *Beecher*, 44 Vt. 648; *Harding* v. *Goodlett*, 3 Yerg. 41; *Sadler* v. *Langham*, 34 Ala. 311; Lewis on Eminent Domain, (2d ed.) secs. 181, 183; *O'Hare* v. *Railroad Co.* 139 Ill. 151; *Tedens* v. *Sanitary District of Chicago*, 149 id. 87; *Railroad Co.* v. *Galt*, 133 id. 657; *Ligare* v. *Chicago*, 139 id. 46.

To constitute a public use the public must be in some way entitled to use or enjoy the property taken. *Sholl* v. *Coal Co.* 118 Ill. 427; *Millett* v. *People*, 117 id. 294; *Dock Co.* v. *Garrity*, 115 id. 155; *Railroad Co.* v. *Wiltse*, 116 id. 449.

Appellant seeks to condemn at least for a public and a private purpose, and this the law does not allow. *Railroad Co.* v. *Galt*, 133 Ill. 657; *Harding* v. *Goodlett*, 3 Yerg. 41; Lewis on Eminent Domain, (2d ed.) sec. 206.

The court may look behind the petition and claim of the condemner to ascertain whether an abuse of the right of eminent domain is contemplated and the real purpose is a private rather than a public one. *Railroad Co.* v. *Wiltse*, 116 Ill. 449.

Mr. JUSTICE WILKIN delivered the opinion of the court:

Appellant filed his petition in the circuit court of Will county, in conformity with the Eminent Domain law of this State, against appellee and others, alleging that "he is the owner of the bed and banks of the DesPlaines river in sections 20 and 21, township 35, north, range 10, east of the third principal meridian, from the south line of section 16 to the west line of section 20; that he is about to build a public grist mill, and also construct other machinery, as well as also the improvement of the

navigation of the DesPlaines river at a point on said land described as follows: (here follows description); that in order to construct, operate and equip said public grist mill and other public machinery, and also the improvement of the navigation of the DesPlaines river, it is necessary to take and injure private property without the owner's consent; that the parties with whom petitioner is unable to agree as to their just compensation are the Atchison, Topeka and Santa Fe Railroad Company * * * and the Sanitary District of Chicago." Then follows a description of a particular piece of land in which the sanitary district has an interest, with the prayer that a jury be empaneled to assess the damages in pursuance of the provisions of "An act in regard to mills and millers," etc., approved March 2, 1872, and in force July 1, 1872. (Rev. Stat. 1874, p. 701.)

Petitioner was able to agree with all the defendants as to their just compensation except the Sanitary District of Chicago, which appeared in the circuit court and entered its motion to dismiss the petition: "First, because this statute is unconstitutional, in that it attempts to authorize the taking of private property without the owner's consent for a private, and not a public, use; second, because petitioner seeks by this proceeding to acquire the property for a private use, and his claim that he desires to equip and operate a public grist mill is a mere subterfuge, under which he seeks to acquire the property for the mere private purposes of developing an extensive water power; third, because the property sought to be taken had been acquired and was used by appellee for the purpose of carrying off the sewerage of Chicago, and being thus already devoted to a public use could not be taken by appellant under this statute, which contemplates only the taking of private property." Evidence was heard in support of and against the motion, and an order entered sustaining the same, to reverse which appellant prosecutes this appeal.

Section 1 of the statute under which appellant claims the right to condemn the property of appellee provides as follows: "When any person or persons owning land on one or both sides of any stream or water-course, any part of the bed of which belongs to such person or persons, shall desire to build or repair any public grist mill, saw mill or other public mill or machinery, or to erect, repair or increase in height any dam across such stream or water-course, to supply water for any such mill or machinery, or to improve the navigation of any such stream or water-course for the use of such mill or machinery, and it shall be necessary to take or injure private property without the owner's consent, and the compensation therefor cannot be agreed upon by the parties interested, it shall be lawful for the person or persons desiring to build or repair such mill or machinery, or to erect, repair or increase the height of any such dam, to cause the damage or compensation to be paid to the owner or other person interested in the property to be taken or injured, to be ascertained in the manner provided by law for the taking or damaging of private property for public use: *Provided,*" etc. Other sections provide that no dam shall be erected to the injury of any mill lawfully existing on the same stream nor to the injury of the health of the neighborhood, and the right to the judgment of condemnation shall be availed of within a certain time, otherwise to revert, etc. Section 6 prescribes the duty of the owner or occupier of every public grist mill within the State, requires him to grind the grain brought to his mill in due turn, and authorizes him to take certain tolls for different kinds of grain. The next section attaches a penalty for his failure to promptly and punctually attend to the duties imposed. Section 8 makes him accountable for the safe keeping of grain received in his mill for the purpose of being ground, and section 9 imposes a penalty for taking illegal tolls. Section 11 relates to dams erected across any river or water-

course in this State under the authority of any law of this State, and has no application to this case.

This class of statutes has been in force in this and many other States of the Union from a very early day,—in Illinois and several others while yet under territorial organization,—and are generally known as "mill acts." They were manifestly passed at a time when water power was practically the only means of running such mills, and which, in the then existing condition of society, were a public necessity. As was to be expected, in view of the demands for mills to grind grain for food and to saw timber into building material for the erection of houses, as well as of the fact that land had little or no market value, these laws were enforced and acquiesced in for a great many years, until valuable rights had been acquired under them. Those of Illinois found in Laws of 1819, p. 264, Rev. Code of 1827, p. 297, and Rev. Laws 1833, p. 449, were each limited to water grist mills and saw mills, except that of 1819, which was confined to grist mills. They were never called in question, so far as we are advised, and certainly not in this court. The later statutes in other States, like the act under which this proceeding is brought, have attempted to extend the power to other than public grist mills, authorizing the taking or damaging of private property for the erection and operation of mills generally, our statute, as will appear from the first section quoted above, extending to "other public mill or machinery," and "to improve the navigation of any such stream or water-course for the use of such mill or machinery." When mill acts came to be questioned, many considerations conspired to influence the courts to be inclined to sustain them, and hence decisions are to be found placing their validity upon various grounds. In every instance, so far as we are advised, acts providing for condemnation proceedings for the benefit of public grist mills have been upheld upon the ground that taking private property for that purpose is

for a public use, and not for a mere individual purpose; and some of the ablest courts of last resort have sustained laws authorizing the taking or damaging of land for water power for running mills, and factories generally, by water power. See cases cited in note to section 180 of Lewis on Eminent Domain, where the author says: "The constitutionality of acts for this purpose has been seriously questioned, but nevertheless upheld either on the ground of authority or on long and general acquiescence and usage, in Iowa, Kansas, Maine, Minnesota, Nebraska and Wisconsin. On the other hand, such acts have been held to be unconstitutional, as authorizing the taking of private property for private use, except in the case of public mills, in the States of Alabama, Georgia, Michigan, New York, Vermont and West Virginia."

The Supreme Court of the State of Massachusetts, and other courts, and the Supreme Court of the United States, have sustained acts which gave the right to have the damages assessed for overflowing the lands of another by the erection of .dams for operating mills and other machinery, not upon the right of eminent domain, but on the theory that the statutes do not authorize the taking or damaging of private property at all,—that is, that "it is not a right to take and use the land of the proprietor above against his will, but it is an authority to use his own land and water privilege to his own advantage and for the benefit of the community;" that it is "a provision, by law, for regulating the rights of proprietors on one and the same stream, from its rise to its outlet, in a manner best calculated, on the whole, to promote and secure their common rights in it." (*Bates* v. *Weymouth Iron Co.* 8 Cush. 548; approved and adopted in *Head* v. *Amoskeag Manf. Co.* 113 U. S. 9.) These and other cases also seem to proceed upon the idea that that which is a public benefit amounts to a public use.

As already said, the validity of our present statute, in so far as it extends the right of condemnation to saw

mills or other public mills or machinery, or to improve
the navigation of any stream or water-course on which
the same may be situated, "for the use of such mill or
machinery," has never been passed upon by this court,
and it seems clear that in view of the language of the
statute, the constitution of this State and the holdings
of this court as to what is a public use, within the mean-
ing of the constitution, and what a taking or damaging
of private property, there is no escape from the conclu-
sion that it must be held unconstitutional and void. In
reaching this conclusion it is not necessary to dissent
from the views of the Supreme Court of the United States
and other courts holding a similar doctrine, for the reason
that our statute is in no sense confined to the ascertain-
ment of damages or just compensation for overflowing
the lands of another, but authorizes the proceeding when-
ever "it shall be necessary to take or injure private prop-
erty without the owner's consent, and the compensation
therefor cannot be agreed upon by the parties interested."
The necessity may, or may not, arise from the flowage
of the lands of another. Moreover, it by express terms
authorizes the owner, etc., "to take or injure private prop-
erty," and allows the assessment of damages or compen-
sation to be paid to the owner or other person interested
in the property *"to be taken or injured to be ascertained,"*
etc. In other words, it is a statute authorizing the tak-
ing or injuring of private property under the right of
eminent domain. If it were otherwise, there could be no
question under our decisions, and, in fact, under the de-
cisions of all the courts, including the Supreme Court of
the United States, that the right which appellant seeks
to enforce by his petition,—that is, to overflow appellee's
lands,—would amount to taking its property. (*Nevins*
v. *City of Peoria*, 41 Ill. 502; *Rigney* v. *City of Chicago*, 102
id. 64.) Lewis, in his work on Eminent Domain, (2d ed.)
sec. 183, says: "There can be no question, it seems to us,
but that the flooding of land by a mill-dam is a taking

It interferes with the right to have the water of the stream flow off in its accustomed manner, and excludes the owner from the use and enjoyment of so much of the land as is covered by water, and may greatly deteriorate that which is not flooded. This has been expressly held to be a taking by the Supreme Court of the United States and by almost every court in the Union,"—citing *Pumpley* v. *Green Bay Co.* 13 Wall. 166. At section 67 he further says: "Where works are constructed below the land of a proprietor, such as a bridge or dam or alteration of the channel, which causes the water to set back and overflow the land of such proprietor, there is a violation of such right, and if the works are authorized by law there is a taking, for which compensation must be made,"— citing cases from almost all the States.

It is also the settled doctrine of this court that to constitute a public use, something more than a mere benefit to the public must flow from the contemplated improvement. The public must be to some extent entitled to use or enjoy the property, not as a mere favor or by permission of the owner, but by right. (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse*, 116 Ill. 449; *Sholl* v. *German Coal Co.* 118 id. 427; *Chicago Dock Co.* v. *Garrity*, 115 id. 155; *Millett* v. *People*, 117 id. 294.) It may be doubted whether the legislature, in fact, intended to extend the right of eminent domain to other than public grist mills. It carefully defines such mills, and prescribes the duties of the proprietors thereof and the rights of the public, making no mention whatever as to what is meant by the expression, "other public mill or machinery." What is a public mill? What is a public machinery? We find nothing in the statute, or elsewhere, answering these inquiries, nor is there anything in petitioner's petition indicating what kind of "other public machinery" he is about to build. It is apparent that he does not seek merely to establish the right to build a public grist mill, but, as shown by his petition, his purpose was, and is,

to take or injure the property of appellee for the purposes of other mills or machinery. The evidence which was heard by the court below fully justifies the conclusion that for all the purposes of a public grist mill his own property affords ample facilities for the production of more power than could be practicably used for a grist mill. Moreover, if the taking of private property for other public mills or machinery is not for a public use, it must be conceded, at most, that he seeks to condemn private property for a public and a private use, which the law will not permit him to do. (*Chicago and Northwestern Railway Co.* v. *Galt*, 133 Ill. 657.) In Lewis on Eminent Domain (vol. 1,—2d ed.—sec. 206, note 33,) it is said: "Thus, under an act for the erection of grist mills, an order of the court condemning land for a grist mill, saw mill and paper mill·is void,"—citing authorities. Our statute does not.authorize a condemnation proceeding for the improvement of the navigation of a stream generally, as counsel seem to argue, but only "for the use of such mill or machinery." Hence, if the object is to improve the navigation of the DesPlaines river for the use of public mills or machinery other than public grist mills, the improvement of the navigation is no less a taking of private property for private use than the erection of "other public mills or machinery." If the petitioner can maintain this petition, he can undoubtedly establish and operate by the water power acquired, every species of machinery and establish any kind of manufactories, or he may transmit and sell the power wherever he can find a market for it. This would certainly be carrying the right of emi-·nent domain to an alarming and dangerous extent.

Passing upon the validity of an act of the State of Michigan enacted in 1865, not materially different from the Illinois statute of 1872, the Supreme Court of that State, in *Byerson* v. *Brown*, 35 Mich. 333, said, Mr. Chief Justice Cooley rendering the opinion: "Unlike the act of

1824, the act of 1865 clearly appears to contemplate other mills than those for the grinding of grain. The title of the act would indicate a purpose to give every species of manufacture which could profitably be carried on by means of water power, the benefits of its provisions. * * * If the act were limited in its scope to manufactories which are of public necessity, as grist mills are in a new country not yet penetrated by railroads, the question would be somewhat different from what it is now. But even in such case it would be essential that the statute should require the use to be public in fact,—in other words, that it should contain provisions entitling the public to accommodations. A flouring mill in this State may grind exclusively the wheat of Wisconsin and sell the product exclusively in Europe, and it is manifest that in such a case the proprietor can have no valid claim to the interposition of the law to compel his neighbor to sell a business site to him, any more than could the manufacturer of shoes or the retailer of groceries. * * * The statute appears to have been drawn with studious care to avoid any requirement that the person availing himself of its provisions shall consult any interest except his own, and it therefore seems perfectly manifest that when a public use is spoken of in this statute, nothing further is intended than that the use shall be one that in the opinion of the commission or jury will in some manner advance the public interest. But, incidentally, every lawful business does this. Undoubtedly there may arise circumstances under which it would be convenient if a power to condemn lands for mill purposes might be exercised, but they are so rare that a stretch of governmental power in order to provide for them would be more harmful than beneficial."

This reasoning is peculiarly applicable to our statute and this case. The Michigan statute was in that decision held unconstitutional and the proceeding dismissed. To the same effect are *Loughbridge* v. *Harris*, 42 Ga. 500,

*Tyler* v. *Beecher*, 44 Vt. 648, *Sauler* v. *Langham*, 34 Ala. 311, and *McCulley* v. *Cunningham*, 96 id. 583.

In *Harding* v. *Goodlet*, 3 Yerg. (11 Tenn.) 41, the petitioners sought to condemn land for a grist mill, saw mill and paper mill under a statute of that State giving the right of eminent domain to one desiring to erect a water grist mill.  The Supreme Court sustained the statute on the ground that a grist mill is a public mill and the miller a public servant under the statutes of Tennessee, but denied the petition, and in its opinion used the following language: "The petitioners say they are desirous to build a grist mill, saw mill and paper mill.  *  *  *  The saw mill and paper mill have no public character. The erection of these mills would be wholly for the private use of these petitioners.  To take Harding's land for such use would be unconstitutional.  The act of 1777 (chap. 23) contemplates no such violation of the rights of one man for the private benefit of another.  Had the application been confined to the saw mill and paper mill, no one could for a moment hesitate in rejecting it.  Does the introduction of the grist mill, thereby asking the land for these complicated purposes, alter the case?  In my opinion the application is entitled to no more favor than if nothing were said about the grist mill.  If an application of this sort were granted, a like application for the erection of iron works, or any other establishment requiring water power, might be made and would be entitled to equal favor, provided the applicant, as a pretext, were to associate a grist mill with his other works. Thus the grist mill, the only thing mentioned in the act of assembly as having any claim to be of a public character, would be made the subterfuge for vesting in one citizen the land of another, and of giving to the whole establishment, of which it would be but an inconsiderable appendage, the high appellation of a public mill. This would be mocking the citizen, who would thus be despoiled of his land to enrich another.  It would be

holding out the idea that his land was taken for a public use and that the public exigencies required it, when, in fact, this was only used as a pretext for obtaining the land for private emolument."

We are clearly of the opinion that, in so far as the statute of 1872 attempts to authorize the condemnation of private property for the purposes of public mills or machinery other than public grist mills, it is violative of that provision of our constitution which declares that private property shall not be taken or damaged for public use without just compensation, the meaning of which is, that private property shall be taken for no other than a public use, and then only upon the payment of just compensation, and that on that ground alone the circuit court would have been justified in sustaining the motion to dismiss appellant's petition. Without reference, therefore, to other questions raised and discussed in the argument of counsel, the order and judgment of the circuit court of Will county will be affirmed.

*Judgment affirmed.*