Johnson, J.
The decisive question in the case is whether the park board has the right and power to appropriate the rights sought to be acquired in Parcel No. 2, which are set forth in the petition.
The Cleveland Metropolitan Park District was created under the provisions of the act of 1917, 107 Ohio Laws, 65, and included within its limits a large portion of Cuyahoga county.
The plaintiff owns a tract of land within that section and the board desires to acquire a portion of the tract in fee, which is Parcel No. 1 in the petition, and to acquire a certain control, being the rights specifically set out in the petition, over the remainder designated as Parcel No. 2. The board, therefore, instituted the proceedings in appropriation in the court of insolvency, and the plaintiff instituted this suit to enjoin the appropriation of the rights in Parcel No. 2, because it was not authorized by law.
On March 6, 1917, the legislature passed an act (107 O. L., 65; Section 2976-1 et seq., General Code) to provide for the conservation of natural resources *453 by the creation, development and improvement of park districts. This statute was amended in 108 Ohio Laws, part 2, page 1097, to provide for the annexation of contiguous territory.
By the terms of Section 2976-7, General Code, it is provided that the “board shall have power to acquire lands either within or without such district for conversion into forest reserves and * * * may create parks, parkways, forest reservations and other reservations and * * * improve and protect the same in such manner as they may deem conducive to the general welfare.” Such lands may be acquired by such board on behalf of the district by gift or by appropriation. “In case of appropriation, the proceedings shall be instituted in the name of the board, and shall be conducted in the manner provided for the appropriation of private property by municipal corporations in so far as such proceedings are applicable. Either the fee or any lesser interest may be acquired as the board may deem advisable and the provisions of this section shall apply to districts heretofore created.”
The controversy in this case concerns the language “Either the fee or any lesser interest may be acquired.”
What is the meaning of the phrase “any lesser interest?”
It is claimed by the defendant that the plaintiff has mistaken his remedy and that injunction will not lie. We think that that question has been conclusively determined by this court in two cases, P., C., C. & St. L. Ry. Co. v. City of Greenville, 69 Ohio St., 487, and C. & P. Ry. Co. v. City of Martins Ferry, 92 Ohio St., 157, which sustain the proposition *454 that injunction will lie where an appropriation proceeding is being prosecuted in a court which is without authority to fully protect the property owner’s rights or adjudicate fully the question as to the necessity of the appropriation.
As indicated, the paramount question in this case is whether the park board has authority to appropriate by condemnation proceedings the rights and privileges which have been set out in the above statement and which are described in the petition. Do they constitute such an interest in the real estate as contemplated by the statute and as authorized to be taken by condemnation under the constitution?
The right of eminent domain is an attribute of sovereignty, and only the sovereign power, or one to whom it has delegated the right, can take property without the consent of the owner, and when this right has been granted to a subdivision of the state, a person or a corporation the terms of the grant must be strictly pursued. When the matter is in doubt it must be resolved in favor of the property owner. These principles are firmly established.
As stated in Currier v. Marietta & Cincinnati Rd. Co., 11 Ohio St., 228, 231, “There is no rule more familiar or better settled than this: that grants of corporate power, being in derogation of common right, are to be strictly construed; and this is especially the ease where the power claimed is a delegation of the right of eminent domain — one of the highest powers of sovereignty pertaining to the State itself, and interfering most seriously, and often vexatiously, with the ordinary rights of property.” Miami Coal Co. v. Wigton, 19 Ohio St., 560; City of Cincinnati v. L. & N. Rd. Co., 88 Ohio St., *455 283; Moorehead v. Little Miami Rd. Co., 17 Ohio, 340, 353, and Parkside Cemetery Assn. v. C., B. & C. Lake Traction Co., 93 Ohio St., 161.
In Moorehead v. Railroad Co., supra, at page 351, it is said:
‘ ‘ The general rule requiring grants of this nature to be strictly construed is, in our opinion, the only safe one, and it should be adhered to with unyielding tenacity.” And at page 353: “It is the duty of the court in such a case, to keep them strictly within their granted powers; and if the necessity of the case requires an enlarged power, to force them to seek it at the hands of the legislature.”
1 Lewis on Eminent Domain (3 ed.), Section 388, declares that “All grants of poAver by the government are to be strictly construed, and this is especially true with respect to the power of eminent domain, which is more harsh and peremptory in its exercise and operation than any other. ‘An act of this sort’ says Bland, J., ‘deserves no favor; to construe it liberally would be sinning against the rights of property.’”'
Section 19, Article I of the Ohio Constitution, guarantees that private property shall ever be held inviolate, but subservient to the public welfare, and provides that when taken in an emergency requiring its immediate seizure for the making of roads,, which shall be open to the public, without charge, a compensation “shall be made to the OAvner, in money, and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money.”
The statutory language involved in this case is “such board shall have power to acquire lands * * * by purchase or by appropriation * * ’ *456 Either the fee or any lesser interest may be acquired.”
What are the lesser interests which, are sought to be acquired in this case? They are set out.in the above statement and are briefly the right to regulate and control all planting and floral decorations on all hillsides on the premises, the right and privilege at all times to enter upon the premises for the purpose of planting the slopes and hillsides, the right to regulate and control all grading and filling, and no such grading or filling shall be done without the written consent of the board or its successors, the right at the option and expense of the board to lay, repair, keep and maintain upon the premises such drains as may be suitable to prevent surface water from creating a swampy condition, the right to prevent sewage or foul airs from being emitted upon the lands of the park board, the right to prevent the erection or maintenance of any building, structure, fence or wall of any kind on the slopes and hillsides of the premises, and lying adjacent to the premises first described, reserving to the owner the right to maintain, repair and renew the present buildings, etc., until the first of January, 1945, the right to prevent the erection or maintenance of telegraph, telephone or electric light poles of certain character, the right to prevent the erection or maintenance of any buildings or structures to be used for any saloon, or for any business, mercantile, mechanical or manufacturing purposes, upon so much of the premises as lies adjacent to or within 100 feet of the boundary line, reserving, however, to the owners the right to use, maintain and repair and renew the present buildings until the first of *457 January, 1945, and the right to prevent the erection or maintenance of any billboard, signboard, or other advertisement, upon the premises last described, in sueh manner or location as to be seen from any portion of the park or parkway within the Valley of Rocky River.
It will be observed that in a very large sense the thing which the park board desires to acquire in Parcel No. 2 is a regulatory power as to the owner’s use of its property. In the description by the park board of the rights and privileges which it seeks to condemn it is not shown that there is any intention to take possession of the property.. It is not the purpose of the park board to put the owner out of possession. It is the purpose of the park board to leave the owner in possession, but by this condemnation proceeding to secure the right and power to a very large degree to give directions to the owner as to how it shall use its property.
It is very clear that the purpose of the constitution was to safeguard the rights of private property and to preserve it to the owner, except where it “shall be taken for public use.”
It must be conceded that the use for which the property is taken must be a public use and that the property must be taken. No other situation is referred to in the constitution, and under the well-settled rules we have above referred to the owner has the right to insist that the taking must be within the power granted by the constitution, and, if it be conceded that the legislature may define the nature of the use for which the private property may be taken for the public, then it is equally well settled under the rules above stated that the legislation defining *458 and granting such power must be strictly construed in favor of the property owner and that those asserting the power must be confined within the limits of the legislative grant. "
Judge Cooley in his Constitutional Limitations (7 ed.), at page 780, in stating that whatever may be incidentally necessary for public use of the land taken may also be appropriated, says:
“Express legislative power, however, is needed for these purposes;.it will not follow that, because such things are convenient to the accomplishment of the general object, the public may appropriate them without express authority of law; but the power to appropriate must be expressly conferred, and the public agencies seeking to exercise this high prerogative must be careful to keep within the authority delegated, since the public necessity cannot be held to extend beyond what has been plainly declared on the face of the legislative enactment.”
In Giesy v. C., W. & Z. Rd. Co., 4 Ohio St., 308, this court said at page 326: “If the legislature, by a direct exercise of authority, should undertake to appropriate property for purposes beyond the scope of this power; or if any subordinate agency, under a power properly conferred, should abuse the authority by using it irregularly, oppressively, or in bad faith, there can be no doubt of the power of the courts to furnish an effectual remedy against such illegal acts.”
It must of course be conceded that where land is needed for public purposes, such as public buildings, public squares, parks, boulevards, streets or highways, ditches, drains or watercourses, there is full authority to appropriate the land; and the fee sim *459 pie title may be taken, or a mere easement, such as a right of way; or a limited term or any interest less than a fee may be taken; but the use must always be a public use and the land or the interest therein must be taken by the public. Where private property is taken against the will of the owner under the power of eminent domain, it is a prerequisite that possession, occupation and enjoyment of the property by ihe public, or by public agencies, is sought and is necessary.
The natural import of the words, “taken for public use,” used in our constitution is that the thing is to be used by the public or by some agency for the public. As- stated by Lewis in his work on Eminent Domain (3 ed.), Section 258, page 506: “Public use means the same as use by the public, and this it seems to us is the construction the words should receive in the constitutional provision in question. The reasons which incline us to this view are: First, That it accords with the primary and more commonly understood meaning of the words; second, it accords with the general practice in regard to tak-. ing private property for public use in vogue when the phrase was first brought into use in the earlier constitutions; third, it is the only view which gives the words any force as a limitation or renders them capable of any definite and practical application.”
These principles are supported in Healy Lumber Co. v. Morris, 33 Wash., 490; Arnsperger v. Crawford, 101 Md., 247; Brown v. Gerald, 100 Me., 351; Gaylord v. Sanitary District of Chicago, 204 Ill., 576; Cozard v. Kanawha Hardwood Co., 139 N. C., 283, 294, and Albright v. Sussex County Lake & Park Commission, 71 N. J. L., 303.
*460 No exact definition of the term “public use” has been agreed upon by the authorities and of course there is difficulty in formulating an accurate definition that would be comprehensive and satisfactory.
Nichols in his work on Eminent'Domain (2 ed.), Section 45, discusses the term and says: “ A definition of public use which, while not concise, is consistent in all particulars with the weight of judicial authority, is accordingly* the following:
“It is a public use for which property may be taken by eminent domain, (1) to enable the United States or a state or one of its subdivisions to carry on its governmental functions and to preserve the safety, health and comfort of the public, whether or not the individual members of the public may make use of the property so taken, provided the taking is made by a public body; (2) to serve the public with some necessity or convenience of life which is required by the public as such and which cannot be readily furnished without the aid of some governmental power, whether or not the taking is made by a public body, provided the public may enjoy such service as of right; (3) in certain special and peculiar cases, sanctioned by ancient custom or justified by the requirements of unusual local conditions, to enable individuals to cultivate their land or carry on business in a manner in which it could not otherwise be done, if their success will indirectly enhance the public welfare, even if the taking is made by a private individual and the public has ño right to service from him or enjoyment of the property taken.”
These observations are quoted and relied on in the brief of the defendant in error in the case before us.
*461 Take the first situation named by the author. Under it the state or one of its subdivisions may appropriate land for fire-engine houses, or for a garbage-disposal plant, or similar matters, “whether or not the individual members of the public may make use of the property so taken, provided the taking is made by a public body. ’ ’
Now consider the second. Under this a. municipality may appropriate lands for the purpose of furnishing a watershed to assist in the maintenance of a system of waterworks which is required by the public, and this taking may be by an incorporated water company, or by a subdivision of the government, provided the public has the right to. enjoy the service, and provided the enterprise is a public enterprise. And under the last instance stated, the rights and easements are appropriated for the purpose of locating ditches or roads which will assist individuals in the cultivation of their land and thus indirectly enhance the public welfare. For instance, the language of the Ohio statute as to ditches is that the ditch “will be conducive to the public health, welfare or convenience.”
It is manifest from the slightest consideration that in each of these instances there is an actual taking of the land, or an actual acquisition of an easement in the land, a going upon and acquiring either a fee or a lesser interest.
The case of Attorney General v. Williams, 174 Mass., 476, is relied upon in support of the contentions of the defendants in error. In that case an act of the legislature entitled “An Act relative to the height of buildings on and near Copley Square in the city of Boston,” was held to be constitutional. It prohibited the erection of buildings above a speci *462 fied height in Copley Square, which was one of the old parks of Boston. It provided for the payment of damages which resulted from the prohibition. In the opinion, at page 478, it is said: “Regulations in regard to the height and mode of construction of buildings in cities are often made by legislative enactments in the exercise of the police power, for the safety, comfort, and convenience of the people and for the benefit of property owners generally. The right to make such regulations is too well established to be questioned. * * * It would be hard to say that this statute might not have been passed in the exercise of the police power, as other statutes regulating the erection of buildings in cities are commonly passed. But it differs from most statutes relative to this subject in providing compensation to persons injured in their property by the limitations which it creates. In this respect it conforms to the constitutional requirements for the taking of property by the right of eminent domain. Looking to all its provisions in connection with the place to which they apply, it seems to have been intended as a taking of rights in property for the benefit of the public who use Copley Square.”
With reference to public parks the court says, at page 479: “Their value is enhanced by such touches of art as help to produce pleasing and satisfactory effects on the emotional and spiritual side of our nature. Their influence should be uplifting and, in the highest sense, educational. If wisely planned and properly cared for they promote the mental as well as the physical health of the people. For this reason it has always been deemed proper to expend money in the care and adornment of them to make them beautiful and enjoyable.”
*463 With reference to that statute it must be noted that it is evident from its title, its provisions, and the manner in which it was regarded by the court, that it was passed fundamentally in the exercise of the police power, but that, as the court observed, it differs from most statutes relative to that subject in providing compensation to the persons injured in their property by the limitations which it creates. In this respect it conforms to the constitutional requirement for the taking of property by the right of eminent domain. But it is not a proceeding in condemnation. It was all the while a regulatory provision with reference to the use of their property by the neighboring owners, although the court regarded it as somewhat similar to a proceeding in condemnation.
A very material and essential difference from the case before us is that the regulations and procedure were fixed by the legislature itself. The damages could be easily ascertained and their payment was required.
In this case the rights and privileges which are sought to be secured are not certain, and their exercise by the board would be entirely indefinite. The right to regulate and control, the right to prevent certain things, such as the erection of fences, walls, structures, etc., when conferred upon the park board, is not of such a character as to inform the owner of the property as to what has been taken away from him or what uses it would be safe for him to make of his property in the future.
It does not appear that any provision has been made concerning the method of exercising these rights to control, regulate and prevent the various matters stated in the petition, nor does it appear bow they are to be enforced, nor how often they may *464 be altered, nor what notice must be given to the owner of the property who remains in its possession, nor whether he shall have a right to be heard touching the various matters. The uncertainty, confusion and contention that would necessarily arise are very apparent.
We think it is clear that the statute involved in this case does not contemplate any such uncertain dealing with the property of citizens.
As pointed out, the statute. provides that either the fee or any lesser interest may be acquired, and when an interest less than the fee is sought to be acquired the owner whose property is to be taken against his will should be apprised of the exact extent of the lesser interest, so that he may know definitely the extent of the interest in the property which is not taken from him. And the lesser interest taken must be described with such certainty as to enable a jury to intelligently assess the compensation to be paid for the interest taken in accordance with the constitution.
The constitution and the statute contemplate the physical possession and use and not the regulatory power which the state might exercise under the police power. Judge Cooley in his Constitutional Limitations (7 ed.), at page 766, defines it as follows: “Public use implies possession, occupation and enjoyment of the land by the public at large, or by public agencies.”
Nothing is more firmly established than that the state and municipal authorities in the exercise of the police power may make all such provisions as may be reasonable, necessary and appropriate for the protection of the public health and comfort, and *465 when any such provision has a real and substantial relation to that object, and does not interfere with the enjoyment of private rights beyond the necessities of the situation, every intendment is to be made in favor of its lawfulness. Toledo Disposal Co. v. State, 89 Ohio St., 230; Froelich v. City of Cleveland, 99 Ohio St., 376, and Leis v. Cleveland Ry. Co., 101 Ohio St, 162, 169.
In California Reduction Co. v. Sanitary Reduction Works, 199 U. S., 306, Mr. Justice Harlan says at page 324: “This court has said that ‘the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community.’ ”
And it was long ago said by Chief Justice Shaw, in Commonwealth v. Alger, 7 Cush. (61 Mass.), 53, 85:
“Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient.
“This is very different from the right of eminent domain, the right of a government to take and appropriate private property to public use, whenever the public exigency requires it.”
No one would contend that it is not proper to expend public money in the acquisition, care and adornment of public parks. They contribute to the *466 mental as well as to the physical improvement of the people, and their aesthetic value in large commercial and industrial centers is very great.
When the acquisition of private property is nécessary for the promotion of these laudable objects, the owner of it must yield in the interest of the public welfare, but the makers of the constitution included in its guaranties that the private property could only be taken for a public use after compensation therefor had been first made.. This is the only way that it can be legally taken for the public use in Ohio.
The police power is a very elastic and undefined thing. Within the past generation it has been given a constantly widened interpretation. By its application the range of governmental authority and activity has been greatly extended. It is of vast importance that this tendency shall not be indulged so far as to materially weaken the guaranties of our written constitutions, under which our country and our nation have advanced to their present pre-eminent place in the world, which have been so helpful and so assuring to the individual citizen, and which were secured after long and arduous struggle. This court has, in many instances, asserted the superiority of the fundamental law and the duty of the courts to uphold it. State, ex rel. Campbell, Pros. Atty., v. Cincinnati St. Ry. Co., 97 Ohio St., 283, 309, and City of Cincinnati v. Harth, 101 Ohio St., 344, 353.
To permit by an appropriation proceeding the engrafting on the property of the plaintiff in this case of rights and privileges of the uncertain and *467 indefinite character set forth in the petition would be a disregard of guaranteed rights of the plaintiff.
The judgment below will be reversed.

Judgment r&versed.

Marshall, C. J., Hough, Wanamaker, Robinson, Jones and Matthias, JJ., concur.