Pittsburgh, Ft. Wayne and Chicago Ry. Co. *et al.*

*v.*

The Sanitary District of Chicago.

*Opinion filed October 14, 1905—Rehearing denied Dec. 12, 1905.*

1. Eminent domain—*petition need not state manner of use.* A petition for the condemnation of land need not state the manner in which the land is to be used.

2. Same—*necessity for condemnation is not a judicial question.* Where property is subject to condemnation and is being condemned for a public use, the court, in the absence of a clear abuse of the petitioner's privilege, cannot deny the right to condemn upon the ground that the exercise of power is unnecessary or inexpedient.

3. Same—*Sanitary District of Chicago may condemn land devoted to railroad uses.* Under section 8 of the Sanitary District act of 1889, (Laws of 1889, p. 129,) authorizing a sanitary district to acquire, by purchase, condemnation or otherwise, *any* and *all* property that may be required for its corporate purposes, the Sanitary District of Chicago has power to condemn lands already devoted to other public purposes, including railroad uses.

Appeal from the Circuit Court of Cook county; the Hon. R. W. Clifford, Judge, presiding.

Loesch Bros. & Howell, Herrick, Allen, Boyesen & Martin, and Wilson, Moore & McIlvaine, for appellants.

James Todd, and Eddy, Haley & Wetten, (P. C. Haley, and Dolph, Buell & Abbey, of counsel,) for appellee.

Mr. Justice Hand delivered the opinion of the court:

This was a petition filed in the circuit court of Cook county by the Sanitary District of Chicago to condemn a narrow strip of land situated upon the west bank of the south branch of the Chicago river, between the south line

of Madison and the north line of VanBuren streets, in the city of Chicago, the east line of said strip being the center line of said river, to enable it to deepen, widen and improve said river from Lake to Robey streets, and thereby increase the flow of water from Lake Michigan through said river into its main artificial channel, which connects with the said south branch at Robey street and extends to Lockport, without increasing the current in said river to a greater velocity than that provided for by the Secretary of War in the permit issued to said sanitary district by him, permitting it to divert a portion of the waters of Lake Michigan through said south branch into its main channel. The appellants filed a motion to dismiss the petition on the ground of want of jurisdiction in the court to hear and determine the cause. The motion was overruled by the court, and a jury was empaneled to assess the appellants' compensation. The jury returned into court their verdict fixing the amount of appellants' compensation at $1,389,940, upon which verdict a judgment was rendered, and the appellants having preserved, by proper exceptions, their objections to the ruling of the court in denying their motion to dismiss the petition for want of jurisdiction, an appeal has been prosecuted by them to this court to review the action of the trial court in holding that the sanitary district had the right to condemn, for the purposes aforesaid, said strip of land.

It is first contended the petition is insufficient in averment to give the court jurisdiction. The petition averred that the Sanitary District of Chicago was duly organized under "An act to create sanitary districts and to remove obstructions in the Desplaines and Illinois rivers," approved May 29, 1889, and in force July 1, 1889, and set out the powers conferred upon it as a sanitary district by virtue of the statute under which it was organized, and averred that it had power to condemn land to carry into effect the purpose for which it was organized. It also averred that in order to

carry out the purpose of its organization and make effective the main channel by it constructed, it was necessary that it deepen, widen and improve the Chicago river, in order that it might comply with the statute of the State of Illinois and obtain a minimum flow through its channel of 300,000 cubic feet of water per minute, and such additional quantities of water as from time to time the population of the sanitary district might require, in order that the sewage of said district might be diluted in the manner and degree required by law. It also averred that its board of trustees, on June 19, 1901, had adopted a plan for the deepening and widening of the Chicago river between Lake street and Robey street, in the city of Chicago, and that said trustees, on the 20th day of May, 1903, passed an ordinance by the terms of which the said district had laid out and established its right for the deepening, widening and improving of said river between the south line of Madison and the north line of VanBuren streets, in said city, and that in order to accomplish such purpose and make such improvement it was necessary that the petitioner acquire the strip of land sought to be condemned, which strip was described by metes and bounds. It was also averred that the sanitary district had obtained the permission of the Secretary of War to make the modifications, changes and alterations in the Chicago river contemplated and provided for in the plan and ordinance referred to in the petition. The petition named a large number of persons and corporations, including the appellants, who it was averred had, or claimed to have, some interest in the premises sought to be condemned, and that the petitioner had been unable to agree with said persons and corporations as to the compensation to be paid them by it for said property. The persons and corporations who were named in the petition as interested in said premises, with the exception of the State of Illinois, were made defendants thereto, and the petition prayed that process might issue against said defendants, and that a jury might be empaneled to determine the just compensation to

be paid the several defendants, occasioned by the taking of said strip of land, and for general relief.

The Sanitary Drainage act provides, in express terms, that where it is necessary for a district organized under such act to acquire property by condemnation the proceeding shall be carried on under the Eminent Domain act, and section 2 of the Eminent Domain act requires the petition to state (1) the authority of the petitioner to exercise the right of eminent domain; (2) the purpose for which the property is sought to be taken; (3) a description of the property sought to be taken; and (4) the names of all parties interested in the property, as owners or otherwise, if known, if not known the fact should be stated, and to conclude with a prayer that the compensation to be paid the owner or owners be assessed. We are unable to see wherein the petition, upon its face, fails to comply with the statute and why it was not sufficient to give the court jurisdiction of the case. In *Suver* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 293, it was held that it is not necessary to state in the petition the particular manner in which the land is to be used, as that may be shown by the plans and specifications of the petitioner. The court did not err in declining to dismiss the proceeding for want of a sufficient petition.

It is next contended the petition should have been dismissed because, as urged by the appellants, it was not necessary for the petitioner to take the land sought to be taken, as the object of its organization could be effected without the taking of said strip of land; and the appellants sought to show, upon a motion to dismiss, by affidavits which the court refused to consider but struck from the files, that the petitioner could obtain the flow of water required to effect the object of its organization by taking a strip of land from the river bank opposite the land of the appellants, or by deepening instead of widening the river at the point where appellants' land was situated, or by constructing by-passes beneath the surface of appellants' land sought to be taken,

to accommodate the flow of water required by the petitioner to effect the object of its organization.

The question whether it was necessary that the petitioner acquire title to the strip of land sought to be taken in order that the object of its organization might be effected was a legislative and not a judicial question, and was one to be determined by the trustees of the sanitary district, and not by the court in which the condemnation proceeding was pending. The court in which such a petition is pending may rightfully determine whether the petitioner has the power to exercise the right of eminent domain; whether the property is subject to the right of eminent domain and is being taken for a public use; whether the power is being abused by the taking of an excessive amount of property, and other kindred questions which do not involve a determination of the necessity or the expediency of the taking of the lands sought to be condemned; but where the right to condemn exists, and the property is subject to the exercise of the right of eminent domain and is being condemned for a public use, and the right to condemn is not being abused, the court can not deny the right to condemn on the ground that the exercise of the power is unnecessary or inexpedient, as the determination of that question devolves upon the legislative branch of the government, and is a question which the judicial branch of the government cannot determine. *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511; *Chicago and Eastern Illinois Railroad Co.* v. *Wiltse,* 116 id. 449; *Illinois Central Railroad Co.* v. *City of Chicago,* 141 id. 586; *Chicago and Alton Railroad Co.* v. *City of Pontiac,* 169 id. 155.

In the *Smith case,* on page 519, it was said: "It certainly was never contemplated by the legislature that where the petitioner has brought itself within the provisions of the statute, the right of condemnation can be defeated by simply showing, in the opinions of witnesses who may have no interest in or connection with the objects of the proceeding,

that the land sought to be condemned is not necessary for the purpose stated. * * * On the other hand, the law having authorized such companies to take private property for public use, when one, by a proper petition, has brought itself strictly within the provisions of the statute, and the court can see, from the facts stated, the land sought to be condemned is not manifestly in excess of what would be reasonably necessary for the purpose stated in the petition, the court will not be authorized to interpose on the ground suggested."

Also in the *Wiltse case,* on page 454: "The question of the necessity for the exercise of the right of eminent domain, and in what cases it will be exercised, within the constitutional restrictions, is legislative, and not judicial. And where the power has been delegated to an incorporation by the legislature, the exercise of that power by the incorporation, within the scope and for the uses and purposes named in the legislative grant, will not be a proper subject for judicial interference or control, unless to prevent a clear abuse of the power."

Also in *Illinois Central Railroad Co.* v. *City of Chicago, supra,* on page 599: "The municipal authorities have exercised the option or discretionary authority conferred upon them by the legislature, and have provided for crossings in one, only, of the methods indicated in the statute, and have instituted condemnation proceedings in pursuance of the ordinances so passed by them. Their action in this regard is political or legislative in its character, and cannot be controlled by the courts. Appellant, in these cases, is asking a court of chancery to substitute its judgment for the judgment of the city council upon a question which belongs exclusively to the legislative branch of the government. They are asking a court of chancery to require the city council to repeal its ordinances for grade crossings and in the place thereof to adopt ordinances for viaduct crossings. Such relief as this cannot be granted under the facts disclosed in

these records. * * * 'When the use is public, the judiciary cannot inquire into the necessity or propriety of exercising the right of eminent domain. That right is political in its nature, and not judicial. It belongs exclusively to the legislative branch of the government, and under our constitution the judiciary have nothing to do with it.' "

And in *Chicago and Alton Railroad Co.* v. *City of Pontiac, supra,* on page 165 : "Where the power to exercise the right of eminent domain has been delegated to an incorporation by the legislature, the exercise of that power by the incorporation within the scope and for the uses and purposes named in the legislative grant will not be a proper subject for judicial interference or control unless to prevent a clear abuse of the power."

It is next said that the property sought to be taken at the time the petition was filed was devoted to railroad purposes, and it is urged for that reason it is not subject to be condemned. The strip sought to be taken is a part of a tract of land belonging to the appellants, bounded on the west by South Canal street, on the north by Madison street, on the east by the south branch of the Chicago river and on the south by VanBuren street, and it is intersected by Adams and Jackson streets, which run east and west. The west one hundred and thirty-five feet thereof is occupied by the Union passenger station, and the portion lying east of said one hundred and thirty-five feet and west of said strip is occupied by the freight terminal of the appellants, and said strip is occupied by team-ways and three short stub-tracks which furnish means of access to the freight buildings of appellants located between said strip and the Union passenger station grounds. While no main tracks are located upon said strip, we think, for the purposes of this case, it may be admitted it is used by the appellants in connection with their freight terminal and devoted to railroad purposes. The law is well settled that where land is devoted to a public use it cannot be taken by condemnation for another public use

unless the legislature in express terms or by necessary implication has authorized it to be taken. The question here presented, therefore, is whether or not the statute under which the petitioner is organized in express terms or by necessary implication confers authority upon the petitioner, in order to effect the object for which it is organized, to condemn property which is in use by a railroad company as a freight terminal and similarly situated to the strip of land here in question.

In *People* v. *Nelson,* 133 Ill. 565, when construing the statute under which the petitioner was organized, the court held that while said statute was general in its terms, it was a well known historical fact, and a fact abundantly shown by the terms of the act itself, that the general sanitary scheme provided for by the act was formulated mainly, if not exclusively, with reference to the sanitary conditions and needs of the city of Chicago and its environs, and that the act and its several provisions could not be properly construed without taking into account the peculiar situation of the territory which the proposed Sanitary District of Chicago was intended to embrace. And in *Lussem* v. *Sanitary District of Chicago,* 192 Ill. 404, where was involved the validity of certain bonds issued by the Sanitary District of Chicago, the proceeds from the sale of which were proposed to be used, in part, by the district in paying for deepening and widening the Chicago river, in compensating the owners of property situated along the banks of said river where the same was acquired for the purpose of widening the river, and in constructing bridges across the river where bridges were made necessary in consequence of changes made in the river by the work done therein by the sanitary district, it was held that the district had the power to take possession of the river, subject to the right of navigation and with the consent of the Secretary of War, for the purpose of widening and deepening the same, and that it might condemn such land situated upon the banks of the river as it might need to enable it to

obtain the necessary flow in volume of water to comply with the statute under which it was organized, without increasing the velocity of the flow of the water beyond the velocity of flow provided in the permit of the Secretary of War permitting it to connect its main channel with the south branch of the Chicago river,—that is, to enable it to comply with the law under which it was organized and the permit of the Secretary of War.

By section 17 of the Sanitary Drainage act the petitioner is authorized to enter upon, use, widen, deepen and improve any navigable waterway necessary to effect the object of its organization. This provision undoubtedly was intended to apply, and does apply, to the Chicago river. By section 8 of said act it is provided that such sanitary district may acquire, by purchase, condemnation or otherwise, any and all real property that may be required for its corporate purposes. By virtue of the provisions of said section 8 the sanitary district *in express terms is given power to acquire, by condemnation, any* and *all* real property which it may require for its corporate purposes. This language is broad and comprehensive, and is ample to authorize the petitioner to acquire, by condemnation, the title to the strip in question, if in the judgment of the trustees of the sanitary district its acquisition was necessary for the corporate purposes of the district.

It is, however, contended by the appellants that the right to condemn property held for public use is not conferred upon sanitary districts by section 8 but by section 17 of said act, and it is said section 17 only authorizes the condemnation of a joint use of such property. We do not agree with this contention, but are of the opinion that section 8 authorized the petitioner to condemn any and all real property, which includes property held for a public use; and while section 17 apparently covers the same subject, we find nothing therein which limits the power conferred by section 8, or which deprives the petitioner of the power, under that section, to acquire property held for a public use. Especially

must this be true when it is remembered that the Sanitary District of Chicago is not a corporation for pecuniary profit, but a municipal corporation organized for the purpose of furnishing an outlet to the sewage of a great city and thereby protecting the health of its inhabitants, and that the act under which it was organized was passed especially with reference to the conditions which were known to exist in the territory which was to be embraced within said district when organized. The statute requires the sanitary district to provide a minimum flow of 300,000 cubic feet of water per minute, and the velocity of the flow was limited to three miles per hour, which was afterwards limited by the Secretary of War to one and one-fourth miles per hour. No water could be obtained except from Lake Michigan through the river, with its narrow, winding and obstructed channel, which was lined with docks, railroads and other improvements, and when the statute authorized the sanitary district to enter upon, use, widen, deepen and improve the Chicago river, and gave it power to condemn any and all real property required for its corporate purposes, it manifestly intended to and did confer upon said sanitary district the power to condemn any and all property, whether devoted to the public use or not, located upon the banks of said river, which was necessary for it to possess and control in order that it might successfully widen, deepen and improve said river, which clearly includes the property of appellants.

From a consideration of this record we have reached the conclusion that the petition filed by the petitioner was sufficient; that the question whether it was necessary that the Sanitary District of Chicago should acquire the strip of property in question for a corporate purpose was a question the decision of which rested with the trustees of said district, and that section 8 of the Sanitary Drainage act is broad enough in its terms to authorize said district to acquire title to said strip by condemnation. We are therefore of the opinion that the circuit court had power, under said peti-

tion, to hear and determine said cause, and that that court did not err in declining to dismiss the petition for want of jurisdiction.

The judgment of the circuit court, declining to dismiss said petition, will therefore be affirmed.

*Judgment affirmed.*