---

(No. 12427.—Reversed and remanded.)
The Chicago, Milwaukee and St. Paul Railway Company, Appellant, *vs.* Geo. E. Franzen *et al.* Appellees.

*Opinion filed February 20, 1919—Rehearing denied April 3, 1919.*

1. Railroads—*what is proof of existence of corporation under laws of another State.* The existence of a railroad company as a corporation under the laws of another State is sufficiently proved by a certificate of the Secretary of State of the foreign State showing the articles of association of the company, a statute of the foreign State ratifying and confirming the organization and declaring the company to be a corporation, and, where the company has changed its name, the resolution changing the name of the corporation to the present one.

2. Same—*only authority for foreign railroad corporation to exercise power of eminent domain is act of 1899 for sale and transfer of railroads.* A railroad company incorporated under the laws of another State has no authority to exercise the power of eminent domain by virtue of the general statute on that subject, but its only authority for that purpose is the act of 1899 for the sale and transfer of railroads in certain cases.

3. Same—*when railroads are not within proviso to act of 1899 against purchase of parallel or competing lines.* The fact that a distant point outside the State may be reached by railroads running in different directions, through their connections, does not bring such railroads within the proviso to the act of 1899 against the purchase of parallel or competing lines when they do not run through or serve the same territory and are not competitors.

4. Same—*where corporation has authority to exercise power of eminent domain it may determine necessity for its exercise.* Where the legislature has delegated to a corporation the authority to exercise the power of eminent domain the corporation has also the authority to decide on the necessity for exercising the right, and

its decision will be conclusive in the absence of a clear abuse of the right.

5. SAME—*contract for joint use of tracks is lawful.*  All railroad corporations in the State have the power to make contracts for the joint use of tracks and arrange with each other and with railroad corporations of other States for leasing or running their roads, or any part thereof, as shall be necessary and convenient.

6. SAME—*when building of connections is not making new line of railroad.*  The operation of trains by two separate corporations over one track does not make two railroads either in fact or in law, and the building of connections at the extremities of such a track to facilitate its use by both companies does not constitute the building of a new line of railroad.

7. SAME—*consent of Public Utilities Commission is not a condition precedent to exercise of power of eminent domain.*  Though the approval of the Public Utilities Commission is necessary to the validity of a contract between two railroad corporations for the joint use of a cut-off, it is not necessary that such consent shall be obtained or that the contract be made before the exercise of the right to condemn land for the connecting tracks.

APPEAL from the County Court of DuPage county; the Hon. S. L. RATHJE, Judge, presiding.

H. H. FIELD, C. S. JEFFERSON, and O. W. DYNES, for appellant.

RATHJE, WESEMANN & VANSCHAICK, (FRANCIS W. WALKER, and GEORGE W. THOMA, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The Chicago, Milwaukee and St. Paul Railway Company filed a petition in the county court of DuPage county for the condemnation of certain land for railroad purposes. George E. Franzen, the owner, appeared and filed what is called a traverse, denying that the petitioner had attempted to agree with him before filing the petition as to the compensation and damages to be paid for the land and denying the petitioner's authority in law to condemn the land sought

to be taken. This traverse was accompanied by a motion to dismiss the petition for want of jurisdiction, and after a hearing upon evidence the court entered 'a judgment dismissing the petition at the petitioner's costs, finding that it was not authorized by law to take the property. The petitioner appealed.

The petition avers that the petitioner is, and has been for more than twenty-five years, a railway corporation organized under the laws of the State of Wisconsin, owning and operating a system of railroads extending from the city of Chicago west, northwest and southwest through or into the States of Illinois, Iowa, Wisconsin, Minnesota and other States, one of which lines extends north to the city of Milwaukee, Wisconsin, and is known as the Chicago and Milwaukee division, and another, known as the Illinois division, extends from a point on the Chicago and Milwaukee division in the city of Chicago west to Savanna, on the Mississippi river; that the title to those portions of these lines of railroad lying within the State of Illinois was acquired under the statute of the State approved April 21, 1899, known as paragraph 218 of chapter 114 of Hurd's Statutes; that in connection with its said lines of railroad it owns and operates yards, depot grounds and facilities used in connection with its lines of railroad in its business as a common carrier; that both within and without the corporate limits of the city of Chicago its said two lines intersect and connect with lines of railroad of other companies, and at such points cars, loaded and empty, are transferred and delivered from one railroad to the other and business is interchanged; that the Chicago and Milwaukee and Illinois divisions intersect and are connected at Pacific Junction, within the city of Chicago, and there cars, loaded and empty, are transferred and through freight trains pass from one line to the other; that it owns and operates extensive yards, particularly on the Illinois division at Galewood and Godfrey, for the classification of cars and the

making up and breaking up of freight trains; that at and near the Godfrey yards there is a connection with the Indiana Harbor Belt railroad, where cars are transferred and interchanged from one railroad to the other destined to industries and for points on connecting lines in the city of Chicago and east and west thereof, and at or near the Galewood yard there is a connection with the Chicago and Western Indiana railroad, operating what is known as the Inner Belt Line, where like connections and interchanges are made; that at the present time cars of freight coming to Chicago over the Chicago and Milwaukee division destined for points on the Illinois division or west of the Mississippi river or for delivery to the belt lines, and cars of freight coming to Chicago over the Illinois division destined for delivery to the Chicago and Milwaukee division and beyond, are hauled by way of the Pacific Junction connection; that the Godfrey yards are very large and provided with facilities for the classification of cars and the making up and breaking up of trains preparatory to the forwarding of cars to their respective destinations, and cars are classified and trains are made up and broken up which have arrived or are to be forwarded over either division. The petition further shows that to avoid the congestion which prevails on the route by way of Pacific Junction and at said yards and points of connection with said belt lines and other railroads, it is proposing to form a new connection between the Chicago and Milwaukee and the Illinois divisions, which shall extend from Techny, a station on the Chicago and Milwaukee division, to a point near Bensenville, a station on the Illinois division a short distance west of the Godfrey yards, the distance from Techny to Bensenville being approximately fourteen miles by way of the proposed connection and twenty-seven miles by way of Pacific Junction; that for the purpose of making such connection it has contracted with the Chicago and Northwestern Railway Company for running rights over a portion of its

railway from a point near Techny to a point near Bensen-
ville; that when the connections are made, trains and cars
can pass from one of said divisions to the other and avoid
the congestion and longer haul by way of Pacific Junction,
the interchange of cars between said divisions and the belt
lines and other railroads may be made with greater econ-
omy and dispatch and with less delay and inconvenience,
the use, facility and efficiency of the Galewood and Godfrey
yards will be increased and the petitioner's service as a com-
mon carrier improved; that for the purpose of such con-
nection it is necessary to acquire land for right of way at
and near Techny and at and near Bensenville; that the
connecting track will also be used, maintained and operated
for the transfer and interchange of cars between the peti-
tioner's said two divisions and the Chicago and Northwest-
ern Railway Company, and that the formation of a new
connection and the construction of connecting tracks are
necessary for the convenient, economical and efficient trans-
action of the petitioner's business as a common carrier and
the accommodation and convenience of the public; that
the use, control and operation of the petitioner's railroad
and system of transportation were taken over by the Presi-
dent of the United States under the proclamation dated De-
cember 26, 1917, and are now under Federal control and
subject to the provisions of an act of Congress to provide
for the operation of transportation systems while under
Federal control, etc., and that the formation of the pro-
posed new connection and the expenditure of money to de-
fray the cost have been authorized by the proper officials
administering the business of the petitioner under such Fed-
eral control.

The objection that there had been no attempt before
filing the petition to agree with the owner as to compensa-
tion and damages was expressly waived by the appellees.

The appellees insist that the petition was properly dis-
missed because there was no allegation or proof that there

was any law of the State of Wisconsin under which the
petitioner could be organized as a corporation. The al-
legation was that the petitioner is a railway corporation
organized under the laws of Wisconsin, and the evidence
was the certificate of the Secretary of State of Wisconsin
showing the articles of association of the Milwaukee and
St. Paul Railway Company, a statute approved April 10,
1865, ratifying and confirming the organization and declar-
ing the company to be a corporation, and the resolution
changing the name of the corporation to the present one.
This was proof of the petitioner's existence as a corpora-
tion under the laws of Wisconsin. The appellant, being a
corporation organized under the laws of another State, has
no authority to exercise the power of eminent domain by
virtue of the general statute on that subject. Its only au-
thority for that purpose is the act of 1899, which consti-
tutes paragraph 218 of chapter 114 of Hurd's Statutes, and
provides, in substance, that whenever a corporation organ-
ized under the laws of another State shall be in possession
of a railroad situated in this State belonging to a corpora-
tion of this State, or shall own or control all of the capital
stock of such corporation of this State, then the corpora-
tion of this State may sell and convey, and the corporation
of the other State may purchase, in fee simple or other-
wise, such railroad, and hold, in fee simple or otherwise,
the property so purchased, and may exercise the powers,
privileges and franchises of the corporation whose prop-
erty is so purchased, and may, when necessary or proper,
exercise, in the same manner as railroad corporations in
this State are authorized to, the power of eminent domain
in acquiring lands or property necessary or convenient for
the betterment, maintenance, extension or operation of such
railroad, and for the construction, use and maintenance of
spurs, switches, side-tracks, depots, stations, terminals and
other franchises to be used in connection with such railroad,
with the following proviso: "That this act shall not be

construed so as to permit any railroad company to purchase any parallel or competing line of railroad in this State."

The appellees insist that it does not appear that the Illinois lines purchased by the appellant were not parallel to or competing with some of the lines of appellant. The two Illinois lines run substantially at right angles and do not serve the same territory, but it is claimed that the line running north from Chicago to Milwaukee is practically parallel with another line operated by the appellant along the Mississippi river from Savanna to Prairie du Chien, and that the Illinois division is practically parallel with the line operated by appellant from Milwaukee to Prairie du Chien, and that it is physically possible to carry freight and passengers over the appellant's lines and its connections from Minneapolis and St. Paul to Chicago by way either of Savanna or Milwaukee. Appellant has an extensive system, with many lines extending in different directions. There are perhaps several different routes by which trains or cars might be brought from Minneapolis and St. Paul to Chicago over its lines by way either of Milwaukee or Savanna. The fact that a distant point outside the State may be reached by railroads running in different directions, through their connections, does not bring such railroads within the proviso as parallel and competing lines when they do not run through or serve the same territory and are not competitors for business.

It is objected that in the purchase of the Illinois railroads a compliance is not shown with the proviso of the statute, which requires the approval of the sale and purchase by the stockholders of the companies at a meeting held upon sixty days' notice by publication in some newspaper published in the county or counties where the principal office or place of business of the company or companies existing under the laws of this State may be situated or located. There was introduced in evidence a copy of the proceedings of the stockholders' meeting of the Illinois cor-

poration, the Chicago and Pacific Railroad Company, which began with the following recital:

"Chicago and Pacific Railroad Company
*Stockholders' Meeting,*
Chicago, Illinois, *Oct. 5, 1899.*

"Pursuant to notice given according to law (a copy of which notice and an affidavit of the publication thereof is hereto attached) a special meeting of the stockholders of this company was held at Room No. 315, Old Colony building, in this city, at ten o'clock in the forenoon of this day."

This was followed by the record of the resolution approving the sale and conveyance of the railroad to the Chicago, Milwaukee and St. Paul Railway Company, and attached to it were the notice and affidavit of publication referred to in the recital, which showed a compliance with the statute. This copy was certified by E. W. Adams, secretary of the Chicago, Milwaukee and St. Paul Railway Company, and it is now objected that his authority to certify the proceedings of the Chicago and Pacific Railroad Company does not appear. This objection was not made in the county court and was therefore waived and cannot be made here for the first time.

The court on the hearing held and refused to hold various propositions of law, and besides the general assignment that the court erred in dismissing the petition the appellant has assigned error on the holding of the court on some of these propositions. The court of its own motion held the law applicable to the case to be as follows:

"That the petitioner is authorized to acquire private property by condemnation for the purpose of building extensions of its lines of railroad, provided such extensions are authorized by the charter or articles of incorporation of the Illinois companies from which the petitioner purchased; that neither the charter of the Chicago and Pacific Railroad Company nor the articles of incorporation of the Chicago, Milwaukee and St. Paul Railway Company (the Illinois corporations-grantors of the petitioner) au-

287 – 23

thorizes the building of the proposed line; that the petitioner has the right to connect its Savanna line of railroad with the Chicago and Northwestern line of railroad at the point of crossing of the said lines; that the proposed improvement is not a connection of the Savanna branch of the petitioner with said line of railway of the Chicago and Northwestern Railroad Company such as is authorized by the statute, but that the proposed improvement is a new line of railroad between the points known as Bensenville and Techny; that the proposed improvement is not an extension of the petitioner's lines of railroads; that the proposed improvement is not authorized by the statute, nor is the petitioner empowered by sections 45, 18 or 218 of the Railroad act to acquire private property for the purpose of building such new line of railroad by condemnation."

The following plat will assist, in connection with the allegations of the petition, to an understanding of the situation:

The connection between the Chicago and Milwaukee division and the Chicago and Northwestern cut-off at Techny is at grade and involves the construction of about a mile and a half of track to connect the two lines. It is not involved in this proceeding. At Bensenville the Chicago and Northwestern road crosses the Illinois division about the center of the Godfrey yard at a grade twenty-four or twenty-five feet above that of the Illinois division, and the connection there requires the construction of about two and a half miles of track, about two-thirds of a mile of which will be on the land of the appellees. About one mile of this is straight and the remainder is a compound curve. The proposed connections are indicated on the plat. Other lines of railroad cross the territory, which are not indicated on the plat.

The latter part of the petition explains the purpose of the petitioner in making the proposed connection between the two divisions of its railroad through a running arrangement with the Chicago and Northwestern Railway Company for the joint use of what is called the cut-off from Techny to Bensenville. One object is to divert from the congested territory of Chicago the through traffic over the Chicago and Milwaukee division which must now be carried through to Pacific Junction and then with a back-haul of three miles handled through the Galewood yard. With the new connection it is proposed that through cars on the Chicago and Milwaukee division, instead of being hauled to Pacific Junction, shall go by way of the cut-off from Techny to Bensenville, where they will be handled in the Godfrey yard and transferred to all connecting lines south, southwest, southeast and east from Chicago by a continuous movement and a shorter route, without any back-haul and without having to go through the congested district. Evidence was heard upon the necessity for this change, though it was immaterial, for while the question whether the use for which the appropriation of property by emi-

nent domain is sought is public in its nature is a judicial question which the court may determine, yet when it is determined that the proposed use is public the court cannot inquire into the necessity or propriety of exercising the right of eminent domain. Where the legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the right. *Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Sanitary District of Chicago,* 218 Ill. 286; *Terre Haute and Peoria Railroad Co.* v. *Robbins,* 247 id. 376; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511; *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 id. 333.

The court's judgment dismissing the petition appears to have been based upon its conclusion that the construction proposed by the petitioner was not the connection of its Illinois division with the line of the Chicago and Northwestern Railway Company but was the construction of a new line of railroad between Bensenville and Techny. It was a lawful purpose for the petitioner to connect its tracks with that of the Chicago and Northwestern Railway Company, for the statute gave it the right to do so upon such terms as should be mutually agreed upon by the companies interested in the connection. (Hurd's Stat. 1917, chap. 114, par. 45, p. 2344.) A contract for the joint use of tracks is lawful, for all railroad corporations in the State have the power to make such contracts and arrangements with each other and with railroad corporations of other States for leasing or running their roads, or any part thereof, as shall be necessary and convenient. Hurd's Stat. 1917, chap. 114, par. 44, p. 2344; *Illinois Midland Railway Co.* v. *People,* 84 Ill. 426; *Terre Haute and Peoria Railroad Co.* v. *Robbins, supra.*

The holding of the court that the petitioner has the right to connect its Savanna line of railroad with the Chicago and Northwestern railway at the point of crossing of said lines would require the overruling of the motion to dismiss the petition, for the particular thing to be accomplished by the laying of this track over the appellees' land is the connection of the lines of the two companies at their junction point. The court, however, further held that the proposed improvement is not such a connection of lines of railroad as the statute authorizes but is a new line of railroad between Bensenville and Techny. Whether this is a finding of law or fact, it is erroneous. The operation of trains by two separate corporations over one track does not make two railroads either in fact or in law. There is no evidence in the record of an intention to build another railroad or do anything but connect railroads already built and in operation. The petition states that it is proposed to form and create a new connection between the Chicago and Milwaukee and the Illinois divisions, not by building a new railroad but by connecting with a railroad already built. The only railroad construction is that of the connecting tracks necessary to join the rails of the two railroads already in existence. It is lawful to make an agreement for the joint use of the Chicago and Northwestern cut-off and to run trains over it, and it is lawful to connect the cut-off at one end with the Chicago and Milwaukee division and at the other with the Illinois division. If it is lawful to make the connection the law authorizes the condemnation of the land necessary for the track. If it is lawful to make the contract for the use of the cut-off it is lawful to construct the connecting track, without which it cannot be used, and if both these things are lawful it must be lawful to run trains of such kind and in such numbers over the track as the contract authorizes and the interests of the parties require. All this does not make a new line of rail-

road though it may increase the use and usefulness of the line already there.

There was no proof that a contract for the joint use of the cut-off had been entered into with the consent and approval of the Public Utilities Commission, and the appellees contend that such consent and approval were conditions precedent to the right of the petitioner to condemn the ground for the connecting tracks. Though the consent and approval of the Public Utilities Commission are necessary to the validity of a contract for the joint use of the cut-off, it was not necessary that the contract should have been made or the consent and approval of the Public Utilities Commission obtained before the exercise of the right to condemn land for the connecting tracks. The consent of a city is necessary to the construction of a railroad in the city crossing its streets and alleys, but it is not a condition precedent to the condemnation of property for the construction of the road that such consent should have been previously obtained. The consent may be afterward obtained and it is immaterial when it is secured. (*Suburban Railroad Co.* v. *Metropolitan Elevated Railroad Co.* 193 Ill. 217; *Dowie* v. *Chicago, Waukegan and North Shore Railway Co.* 214 id. 49.) So the contract for the joint use of the railroads and the consent and approval of the Public Utilities Commission are not conditions precedent to the right of the appellant to the condemnation of property for a connecting track.

The judgment of the county court will be reversed and the cause remanded, with directions to overrule the motion to dismiss the petition.

*Reversed and remanded, with directions.*