# BORG et al. v. ILLINOIS TERMINAL CO.

(Circuit Court of Appeals, Seventh Circuit. December 22, 1926. Rehearing Denied February 25, 1927.)

## No. 3808.

1. **Railroads** ⊂=142—**Consolidation contract between railroad bondholders' committee and terminal company held void for want of approval of Illinois Commerce Commission (Public Utilities Act Ill. § 27e).**

Contract between terminal company and railroad bondholders' committee, foreclosing mortgage on railroad property, which would in effect result in consolidation of terminal company and railroad, *held* void, under Public Utilities Act Ill. § 27e (Cahill's Rev. St. 1925, c. 111a, § 42) for want of approval of Illinois Commerce Commission, and insufficient to support action against terminal company for damages for its breach.

2. **Railroads** ⊂=142—**Advance approval of consolidation contract between railroad bondholders' committee and terminal company by Illinois Commerce Commission held required (Public Utilities Act Ill. § 27e).**

Under Public Utilities Act Ill. § 27e (Cahill's Rev. St. 1925, c. 111a, § 42), argument that Illinois Commerce Commission had no arbitrary powers, but was required to approve contract between railroad bondholders' committee and terminal company, which would result in a consolidation, and hence advance approval of such contract by commission was not required, *held* untenable.

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

Action by Sidney C. Borg and others, as a committee, etc., acting under a bondholders' agreement, against the Illinois Terminal Company. Judgment for defendant, and plaintiffs bring error. Affirmed.

Nathan G. Moore, of Chicago, Ill., for plaintiffs in error.

A. M. Fitzgerald, of Springfield, Ill., and E. J. Verlie, of Alton, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This action was for damages for breach of a written contract between plaintiffs, a committee holding for foreclosure prior lien mortgage bonds of the Chicago, Peoria & St. Louis Railway Company, then in default, and defendant. A general demurrer to plaintiffs' declaration was sustained, and judgment entered thereon.

The terms of the contract, so far as here material, are: That plaintiffs should bring to a judicial sale the property covered by the mortgage, and, if no bid was made at

such sale satisfactory to plaintiffs, they would cause the property to be purchased in their behalf by a nominee, such nominee to convey the property to a new corporation, to be organized for the purpose of acquiring and operating said property; that defendant was given the right and was to do certain things touching the new corporation: (a) Designate the state under the laws of which the new corporation was to be chartered; (b) specify the corporate powers thereof; and (c) fix the number of shares of its capital stock. The new corporation was to (a) issue $2,180,000 first mortgage bonds; (b) issue its capital stock, the bonds and one-fourth of the capital stock to go to plaintiffs, who were to cause the other three-fourths of the capital stock to be issued or assigned to defendant. Various payments of money were to be made by defendant. It was also provided that defendant, "due corporate action first having been had," would indorse an unconditional guaranty upon each of the bonds, in a form satisfactory to plaintiffs. While plaintiffs were proceeding to perform under the contract, but before any sale, the breach occurred.

The defenses are: That the contract is ultra vires, because defendant had no power to purchase the stock or guarantee the bonds; that the contract cannot be enforced, because not approved by either the Illinois Commerce Commission or the Interstate Commerce Commission.

Plaintiffs contend: (a) That the transaction was to be a lawful sale and purchase through foreclosure proceedings; (b) that what was said in the contract to be a guaranty was in fact not a guaranty, but an act for defendant's own benefit and within its implied powers; (c) that if it was a stock purchase, it was an act within defendant's general authority to conduct a railroad business, there being no limitation upon such authority, except the Illinois constitutional inhibition against one railroad acquiring parallel or competing lines; and (d) that the time for submission to either commission had not arrived.

[1] Of the many questions raised, we deem it necessary to consider but one. Under the holding of this court in East St. Louis Connecting Ry. Co. v. Jarvis, 92 F. 735, the effect of what defendant undertook to do was to consolidate its road with the corporation which was to take the title to the property under the proposed foreclosure. Both companies were Illinois corporations, subject, so far as any consolidation might be concerned, to the Public Utilities Act of Illinois. See definitions, section 10, and intercorporate relations, section 27, Cahill's Ill. Revised Statutes, c. 111a. "The powers given the commission are of regulation and control over the corporation after its organization, except in the case of consolidation of public utility corporations under section 27, which requires the consent of the commission to the consolidation." N. Y. Central R. R. Co. v. Stevenson, 277 Ill. 474, 479, 115 N. E. 633, 635.

Whether all the provisions of section 27 apply to railroad corporations, to the extent of repealing some of the provisions of the Illinois Railroad Incorporation Act, we do not deem it necessary to determine. It seems clear that the contract here in question comes squarely within the provisions of the last paragraph of section 27e of the Public Utilities Act:

"Every assignment, transfer, lease, mortgage, sale, or other disposition or incumbrance of the whole or any part of the franchises, licenses, permits, plant, equipment, business or other property of any public utility, or any merger or consolidation thereof, and every contract, purchase of stock, or other transaction referred to in this section, made otherwise than in accordance with an order of the commission authorizing the same, except as provided in this section, shall be void."

Without the consent of the commission, all such contracts are void. It is not contended that it is not necessary to have the contract approved at some time by the Illinois commission, and it is conceded that it was not so approved, but it is urged that that time had not arrived, before the breach. In support of that contention, our attention is directed to the language of section 27, which says that, in proceedings before the commission, to obtain the authorization provided for therein, there shall be set forth the complete terms of the proposed contract, etc. It is necessarily true that that which parties propose to do must be determined before it can be carried before the commission, but it is only the proposed contract, not a consummated and already binding contract, that is to be so presented.

[2] It is further urged that it is not necessary to go to the commission in advance, because the commission has no arbitrary powers, but must approve the contract. In view of the statute, that argument falls by its own weight.

Plaintiffs place reliance upon C., M. & St. P. Ry. Co. v. Franzen, 287 Ill. 346, 122 N. E. 492. That was a condemnation suit,

and the court there said: "Where the Legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the right." See page 356 (122 N. E. 496), and cases cited.

The court further said (page 358 [122 N. E. 497]): "Though the consent and approval of the Public Utilities Commission are necessary to the validity of a contract for the joint use of the cut-off, it was not necessary that the contract should have been made or the consent and approval of the Public Utilities Commission obtained before the exercise of the right to condemn land for the connecting tracks."

In short, that is a holding that no contract for operation was necessary to the right to condemn, but that such a contract is invalid without approval of the commission. It was incumbent on plaintiffs to aver in apt words all things necessary to show a valid contract, and there are here no such averments.

The judgment is affirmed.