(No. 27995.—

JOHN F. ZURN, Appellee, *vs.* THE CITY OF CHICAGO *et al.,*
Appellants.

*Opinion filed January 17, 1945.*

BARNET HODES, Corporation Counsel, JOSEPH F. GROSSMAN, JOSEPH B. FLEMING, and WILLIAM WILSON, all of Chicago, for appellants.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, (BERNARD NATH, and FRANK C. BERNARD, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Cook county. The suit was brought by appellee, a citizen and taxpayer of the city of Chicago. The purpose of the suit was to enjoin the use of public funds of the city for the purpose of carrying out the provisions of an act entitled: "An act to provide for the eradication of slum and blight areas and the rehabilitation and rebuilding thereof through the medium of neighborhood redevelopment corporations, with powers of eminent domain." Ill. Rev. Stat. 1943, chap. 32, par. 550.1 *et seq.*

The defendants named in the suit were the city of Chicago, the city treasurer, and the members of the Chicago Redevelopment Commission, appointed under the act. It was alleged in the complaint that the act violates various provisions of the State and Federal constitutions and is, for that reason, invalid. A motion was filed by the defendants to dismiss the complaint. The motion was denied in part. The defendants elected to stand upon their motion to dismiss the complaint in its entirety, and waived the right to file further pleadings. A decree was entered holding the act invalid, and enjoining the defendants from the use of public funds in carrying out its provisions, and from exercising any of the powers purporting to be vested in them under said act. From that decree, this direct appeal was perfected by the defendants, on the ground that constitutional questions are involved.

A somewhat detailed reference to the provisions of the act is necessary to an understanding of the issues involved and the contentions made. As the title of the act indicates, its purpose is the eradication of slum and blight areas, and the rehabilitation and rebuilding thereof through the medium of Neighborhood Redevelopment Corporations.

Section 1 provides that the act shall be known as "The Neighborhood Redevelopment Corporation Law."

Section 2 sets forth the necessity and purpose of the act and contains a declaration of public policy and public use. That section is as follows:

"There exist in certain urban areas of the State these degenerative conditions, at once both characteristic and causative of Slum and Blight Areas, namely:

"(1) Disproportionate tax delinquency and consequent inadequacy of tax payments in relation to the cost of State and municipal services rendered;

"(2) Economic deterioration of properties and impaired investments;

"(3) A constant exodus of the population of such areas resulting in the further deterioration of such areas and in added costs to the municipalities of this State for the creation of new public facilities and services elsewhere;

"(4) Age, physical deterioration or obsolescence of improvements in such areas particularly those improvements affording family accommodations, to such a degree as to render such areas unfit and unsafe for human use and habitation; and

"(5) Prevalence of the factors conducive to ill health, transmission of disease, infant mortality, juvenile delinquency, crime and poverty.

"Such Slum and Blight Areas are usually situated in the older and more centrally located portions of the cities, villages and incorporated towns involved and, once existing, spread unless eradicated. As a result of these degen-

erative conditions, the territories and properties embraced in Slum and Blight Areas fall into a state of non-productiveness, fail to share their due and proper portion of the taxes necessary for the support of the municipalities within whose boundaries they are situated, and ultimately become waste territories, economic and social, producing but a meager, while consuming a disproportionate, share of the public revenue raised by government to defray the cost of police and fire protection, to preserve the public health and to promote the general welfare. The drain upon the public revenue necessitated by Slum and Blight Areas, if they are permitted to remain and spread, will impair these indispensable governmental functions not only as to such areas but as to the municipalities and the State as well.

"The elimination of these degenerative conditions, and the rehabilitation and rebuilding of Slum and Blight Areas, is in the best interests of health, morals, safety and general welfare of the citizens of the State. The accomplishment of these ends by private initiative, through Neighborhood Dedevelopment Corporations, supervised and regulated by the public, should be fostered, encouraged and aided. Accordingly, such elimination and rehabilitation and rebuilding, through the activities of Neighborhood Redevelopment Corporations as provided by this Act, are hereby declared to be a public use, and Neighborhood Redevelopment Corporations, for these purposes, are hereby authorized to be created with the powers and subject to the public supervision and regulation as hereinafter set forth."

Section 3 is a glossary.

Section 4 provides for the creation of Redevelopment Commissions in cities, villages and incorporated towns. It confers upon cities the power to provide by ordinance for the creation of a Redevelopment Commission to supervise and regulate Neighborhood Redevelopment Corporations, under the act, such Redevelopment Commissions to consist

of not less than three nor more than five members, to be appointed by the mayor, by and with the advice and consent of the city council.

Section 6 provides that Neighborhood Redevelopment Corporations may be organized in the manner provided in the act, with power "to acquire Real Property, to alter, renovate, demolish or rebuild existing improvements thereon, and to construct, maintain, and operate a Development therein, when authorized by and subject to the supervision of the Redevelopment Commission of the city, village or incorporated town wherein the Development Area is located, for the purpose of effecting the Redevelopment of Slum and Blight Areas," in the manner provided in the act. That section further provides that the business and conduct of each Neighborhood Redevelopment Corporation, until the redevelopment of its development area has been achieved, shall be subject to the supervision and regulation of the Redevelopment Commission of the city, village or incorporated town wherein its development area is located.

Section 9 defines the powers of Neighborhood Redevelopment Corporations. It provides that the corporate life of such corporations shall not exceed sixty years. Section 7 contains a like limitation and further provides that such corporate existence shall not be extended. Among other powers conferred on such corporations, by section 9, is the power, "(5) To acquire, own, use, convey and otherwise dispose of and deal in Real Property, however acquired, subject to the conditions and restrictions of this Act; Provided, that no single sale, mortgage, lease or conveyance of two-thirds or more of the corporate assets shall be made, except within a period of one year immediately preceding the expiration by lapse of time of the corporate charter, without the consent of the holders of two-thirds of all the outstanding capital stock of the corporation at any annual meeting or at any special meeting called for

that purpose; Provided further, that no Real Property shall ever be acquired, owned or used by such corporation outside its Development Area. * * * (8) Subject to the provisions of this Act, to acquire Real Property by exercise of the power of eminent domain in the manner provided by the general laws of the State relating thereto."

Section 10 contains an enumeration of the powers which shall not be exercised by Neighborhood Redevelopment Corporations.

Section 12 enumerates certain reports, papers and documents of Neighborhood Redevelopment Corporations, which shall not be filed by the Secretary of State, unless accompanied by the certificate of the Redevelopment Commission.

Section 13 provides for the voluntary dissolution of Neighborhood Redevolpment Corporations, provided the intention to dissolve is accompanied by a certificate of the Redevelopment Commission, as therein provided.

Section 17 is a limitation on the right of Neighborhood Redevelopment Corporations to acquire property. It provides that no such corporation shall acquire title to any real property or any interest therein, except by way of unexercised option or of any development without first making application to the Redevelopment Commission for approval of the proposed development plan in the manner prescribed in the act, and without securing the certificate of convenience and necessity to be issued by the Redevelopment Commission upon the conditions specified in said section. That section further provides for supervision over the activities of Neighborhood Redevelopment Corporations by the Redevelopment Commission in connection with the acquisition of property, the rehabilitation and rebuilding of slum and blight areas and supervision over the plans for such rebuilding.

Section 26 provides for the termination of control over Neighborhood Redevelopment· Corporations by the Redevelopment Commission. That section reads as follows:

"(1) Anything in this Act to the contrary notwithstanding, the supervision and regulation of any parcel of the Development Area by the Redevelopment Commission shall without more cease and determine as to that parcel whenever the Redevelopment Commission shall have made the determination of the Redevelopment of that parcel, as required by paragraph 6 of Section 25 of this Act, and shall have approved a sale, conveyance or lease thereof, as required by paragraphs 4 and 5 of Section 10 of this Act.

"(2) Anything in this Act to the contrary notwithstanding, the supervision and regulation of the Neighborhood Redevelopment Corporation by the Redevelopment Commission shall without more cease and determine whenever the Redevelopment Commission shall find that the Redevelopment of the Development Area of the Neighborhood Redevelopment Corporation has been achieved. In such instance, the certificate of compliance required by Section 12 of this Act shall be issued by the Redevelopment Commission, upon request of the Neighborhood Redevelopment Corporation, without other requirement than the payment of the fee authorized by Section 43 of this Act."

Section 42 provides that before a Neighborhood Redevelopment Corporation may institute proceedings for the acquisition of property by eminent domain, it must make application to the Redevelopment Commission. It provides that certain information shall be included in the application and for the approval of the institution of the proposed condemnation proceedings by a certificate issued by the Redevelopment Commission. Without such certificate of approval no such proceedings can be commenced or maintained.

The principal controversy in the case arises out of the provisions of the act granting to Neighborhood Redevelopment Corporations the power of eminent domain. Counsel, in their able and exhaustive arguments on both sides, concede that the right of eminent domain can be exercised

for the taking of private property only for a public use. The controlling question here is the character of the use to be made of the property which the act authorizes Neighborhood Redevelopment Corporations to acquire by eminent domain. Is it a public use or a use for private purposes? It must be conceded that Neighborhood Redevelopment Corporations organized under the act are private corporations. They have none of the attributes of public corporations or public agencies of the State.

Appellants, in order to sustain the validity of the act, insist that the evils arising out of the existence of slum and blight areas are State-wide, and are so great that the clearance, rehabilitation and rebuilding of such areas, by private corporations, under public supervision and control, constitutes a public use within the meaning of section 13 of article II of the constitution. This contention is based upon the finding and the declaration of public policy and public use contained in section 2 of the act. This finding and declaration of public policy and public use by the legislature is entitled to great weight. Nevertheless, the question whether the corporations authorized under the act are subjected to such public supervision and control as to constitute the use of their property a public use, is a judicial question which must be determined by the courts. In *Limits Industrial Railroad Co.* v. *American Spiral Pipe Works,* 321 Ill. 101, we said: "The question whether the use to which it is sought to apply private property by the exercise of the power of eminent domain is a public use is therefore a judicial question, and whenever the right to take private property by the exercise of that power is challenged because the use for which the property is sought to be taken is not a public use, the court must decide the question."

It is argued that the supervision and control of Neighborhood Redevelopment Corporations, under the act, in their organization, and in their activities in acquiring prop-

erty, slum clearance and the rehabilitation and rebuilding of slum and blight areas, is such that those activities must be classified as public uses and public purposes. To sustain the act, appellants rely chiefly upon the decision of this court in *Krause* v. *Peoria Housing Authority*, 370 Ill. 356, which sustained the validity of the Housing Authorities Act (Ill. Rev. Stat. 1943, chap. 67½,) and upon *Murray* v. *LaGuardia*, 291 N. Y. 320, 52 N. E. 2d 884.

In *Krause* v. *Peoria Housing Authority*, we sustained the Housing Authorities Act because it was found that its purpose was public and charitable. Under that act the powers are exercised by a public corporation. Such corporations were held to be public charities whose property is devoted to a public charitable purpose. No profits accrue to the corporation from the rentals received from its property, or otherwise. Its purpose is public and charitable.

In the case of *Murray* v. *LaGuardia*, the New York act was sustained under a special amendment to the constitution of that State, which authorized the legislature to enact legislation "for low rent housing for persons of low income as defined by law, or for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas, or for both such purposes." By that amendment, it was further provided that the legislature should have power to grant to any city, town or village, or to any public corporation and *to any corporation regulated by law as to rents, profits, dividends and disposition of its property, engaged in providing housing facilities,* the power of eminent domain. Under the act here in question, Neighborhood Redevelopment Corporations are not regulated by law as to rents, profits, dividends and the disposition of their property.

It will readily be seen, we think, that the corporations created under the Housing Authorities Act are wholly different from Neighborhood Redevelopment Corporations to be created under the Neighborhood Redevelopment Cor-

poration Law. As already observed, the corporations created under the Housing Authorities Act are public, charitable corporations, created for the purpose of the development and operation of living quarters for those in the low-income bracket, who, by reason of such conditions, are unable to provide for themselves suitable housing facilities. The low rentals to be charged for the use of the properties of corporations created under that act, were made possible by tax exemption and public subsidies. The act here in question contains no provision for low rentals. There are no restrictions on, or supervision over, the rentals to be charged. No such regulations, limitations or restrictions may be imposed. In this respect the owner is free from all supervision and control. Neither the regulation nor the control of rentals is the purpose of the act. It is purely an act for slum clearance and rehabilitation of slum and blight areas. The case of *Murray* v. *LaGuardia* is also easily distinguishable because of the particular wording of the constitution of New York. Other cases cited by appellants from foreign jurisdictions are likewise cases involving housing authorities acts, and are clearly distinguishable on that ground. Such cases are of little aid on the questions here involved.

Here, the question is the use which is to be made of the property acquired by eminent domain. Subsidized tenancies, based upon below-rental values, are not within the purview of the act. The act is not one for the supervision or regulation of rents. That is not its purpose. The sole basis for the public use is slum clearance and the rehabilitation of slum and blight areas. Slum and blight areas are defined in section 3 as those urban districts in which a major portion of the housing is detrimental to the health, safety, morality or welfare of the occupants by reason of age, dilapidation, overcrowding, faulty arrangement, lack of ventilation, light or sanitation facilities, or any combination of these factors.

Section 6 of the act provides for the regulation and supervision of Neighborhood Redevelopment Corporations by the Redevelopment Commission during the period of the redevelopment or rebuilding of slum and blight areas. It is there specifically provided that "the business and conduct of each Neighborhood Redevelopment Corporation, until the Redevelopment of its Development Area has been achieved, shall be subject, as hereinafter provided, to the supervision and regulation of the Redevelopment Commission."

No steps may be taken by a redevelopment corporation, in the process of slum clearance and rehabilitation, until its development plans have been approved by the commission and the commission has issued its certificate of convenience and necessity, as provided in the act. The act provides that before a certificate of convenience and necessity may issue, the commission must find that the proposed redevelopment will achieve the public purposes defined in section 2; that the plans conform to the existing zoning ordinances or with the official municipal plan, if there be one; that the public facilities are presently adequate or will be made adequate by the time the development is ready for use; that a bond conditioned for the commencement and completion of the redevelopment has been filed with the commission as required by section 17(2)(a); that the Neighborhood Redevelopment Corporation has agreed in writing to incorporate in all its conveyances such restrictions as the commission may prescribe by rule concerning the type of construction, use, landscape and architectural design of the development; that the corporation has agreed in writing to devote a minimum of 10 per cent of the development area for a park, playground or recreation center for the use of the development and has provided adequate financial arrangements for defraying the upkeep thereof during its corporate existence, and to place thereon such use restrictions as the commission may by rule impose.

After the certificate of convenience and necessity has been issued by the commission, section 42 provides that before the redevelopment corporation may exercise the right of eminent domain, it shall obtain the approval and certificate of the commission. That section, in so far as material, is as follows:

"(1) Before a condemnation proceeding may be instituted by a Neighborhood Redevelopment Corporation, such Neighborhood Redevelopment Corporation shall present to the Redevelopment Commission an application requesting approval of the proposed condemnation proceeding, which shall contain, among other things:

"(a) The legal description, and the description thereof by city blocks, street and number, if any, of the Real Property proposed to be condemned, and the character of the estates, in fee-simple or otherwise thus to be acquired.

"(b) Proof that such Real Property is within the Development Area of the applicant Neighborhood Redevelopment Corporation.

"(c) Proof that the Neighborhood Redevelopment Corporation has acquired by purchase or has secured options to purchase sixty per centum or more in area of the land within the Development Area.

"(d) A copy of any proposed contract or contracts with contractors for the work proposed to be done in the Development of the Development Area, and a copy of any bond or bonds to be required by the Neighborhood Redevelopment Corporation from the contractors to insure the performance of the contract or contracts.

"(2) The Redevelopment Commission shall determine within a reasonable time thereafter the sufficiency of the statements in the application and the verity of the copies of the contracts and bonds appended to the application. If the Redevelopment Commission finds:

"(a) That the determination should be in the affirmative;

"(b) That the bond or bonds are sufficient in form, amount and security; and

"(c) That the Development Plan of the applicant Neighborhood Redevelopment Corporation has been approved by the Redevelopment Commission and the procedure for judicial review thereof has not been initiated within the time prescribed by this Act, or, if a judicial review has been so initiated, that a final order shall have been had, as specified in Section 19 of this Act, whereby the Development Plan was 'Approved,' then the Redevelopment Commission shall issue to the applicant Neighborhood Redevelopment Corporation a certificate of approval of the institution of the proposed condemnation proceedings, which certificate shall contain a legal description of the Real Property proposed to be condemned and the character of the estates, in fee-simple or otherwise, thus to be acquired, the facts so determined with respect thereto, and a statement that the Real Property proposed to be condemned is required for a public use and that its acquisition for such use is necessary and convenient."

The legislature has thus vested in redevelopment corporations created under the act, the power of eminent domain for the purposes set forth in the act, and upon the conditions therein prescribed. In *Chicago, Rock Island and Pacific Railroad Co. v. Town of Lake*, 71 Ill. 333, it was said:

"Courts have the right to determine whether the use private property is proposed to be taken and appropriated for is public in its nature or not, but when the use is public, the judiciary can not inquire into the necessity or propriety of exercising the right of eminent domain. That right is political in its nature, and not judicial. It belongs exclusively to the legislative branch of the government, and under our constitution the judiciary have nothing to do with it.

"We know of no well considered case where the courts have undertaken to pass upon the necessity or expediency of the exercise of the right of eminent domain, and are well satisfied none can be found.

"Of the necessity or expediency of exercising the right of eminent domain in the appropriation of private property to public uses, the opinion of the legislature or of the corporate body or tribunal upon which it has conferred the power to determine the question, is conclusive upon the courts, since such a question is essentially political in its nature, and not judicial; but the question whether the specified use is a public use or purpose, or such use or purpose as will justify or sustain the compulsory taking of private property, is perhaps ultimately a judicial question, and if so, the courts cannot be absolutely concluded by the action or opinion of the legislative department. But if the use is public, or if it be so doubtful that the courts can not pronounce it to be such as not to justify the compulsory taking, the decision of the legislature, embodied in the enactment giving the power, that a necessity exists to take the property, is final and conclusive."

In *Chicago, Milwaukee and St. Paul Railway Co.* v. *Franzen*, 287 Ill. 346, the rule was again stated as follows: "* * * while the question whether the use for which the appropriation of property by eminent domain is sought is public in its nature is a judicial question which the court may determine, yet when it is determined that the proposed use is public the court cannot inquire into the necessity or propriety of exercising the right of eminent domain. Where the legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the right. *Pittsburg, Fort Wayne and Chicago Railway Co.* v. *Sani-*

*tary District of Chicago,* 218 Ill. 286; *Terre Haute and Peoria Railroad Co.* v. *Robbins,* 247 id. 376; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511; *Chicago, Rock Island and Pacific Railroad Co.* v. *Town of Lake,* 71 id. 333."

In the later case of *Chicago North Shore and Milwaukee Railroad Co.* v. *Chicago Title and Trust Co.* 328 Ill. 610, we said: "Where the legislature has delegated to a corporation the authority to exercise the power of eminent domain the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the right, and courts cannot inquire into the necessity or propriety of its exercise. (*Terre Haute and Peoria Railroad Co.* v. *Robbins,* 247 Ill. 376; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Franzen,* 287 id. 346.)"

The legislature has definitely determined that the prevalence of the conditions enumerated in section 2 are conducive to ill-health, the transmission of disease, infant mortality, juvenile delinquency, crime and poverty. It has further declared that the elimination of the conditions set forth in section 2 of the act is in the best interest of the health, morals, safety and general welfare of the citizens of the State. In view of this legislative declaration, the court cannot say that the finding of the legislature that the elimination and redevelopment of slum and blight areas is a public purpose is unwarranted, or that the use to be made of the property is not a public use and a public purpose. The taking of property for the purpose of the elimination, redevelopment and rebuilding of slum and blight areas, meets all the requirements of a public use and public purposes within the principles of the law of eminent domain.

The fact that the continued use of the property for public purposes, after the elimination of slum and blight areas and the redevelopment of such areas has been achieved, is only partially assured and safeguarded by the act, is

wholly immaterial. When such areas have been reclaimed and the redevelopment achieved, the public purpose has been fully accomplished. The fact that the act does not thereafter vouchsafe the continued use of the property acquired for public purposes, does not in any way affect the purposes of the act or render the taking of the property a taking for a use or purpose which is not public. The achievement of the redevelopment of slum and blight areas, as defined in the act, in our opinion constitutes a public use and a public purpose, regardless of the use which may be made of the property after the redevelopment has been achieved.

Appellee further contends that section 18 is invalid for the reason that it does not provide for proper notice to property owners of the application of the Neighborhood Redevelopment Corporation to the Redevelopment Commission for a certificate of convenience and necessity. It is argued that the failure of the act to provide for actual notice of such hearing to the property owners constitutes a denial of due process of law. It should be kept in mind that this hearing is merely an application for a certificate of convenience and necessity. The act provides only for general notice by publication. It is argued that when the commission issues its certificate of convenience and necessity, this authorizes the corporation to proceed with the project and to acquire the property located within the development area by eminent domain. It is obvious, however, that no property or property interests are to be taken or interfered with on this hearing. It is simply one of the steps prescribed by the act in the chain of events authorizing the redevelopment corporation to proceed with the development and to acquire property by voluntary conveyance and by eminent domain for that purpose.

In the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Cavanagh*, 278 Ill. 609, the Public Utilities Commission, after notice and hearing, found that the public

convenience and safety required a relocation of the railroad tracks. It ordered the railroad company to relocate its tracks. For that purpose the railroad company was ordered to acquire, either by purchase or eminent domain, whatever property might be necessary. The suit was instituted for the purpose of acquiring the necessary right of way by eminent domain. It was there said: "The General Assembly might at any time confer such power by a general act, but it has not been done, and if the petitioner has the power it is because of the order of the utilities commission. The power of eminent domain to take or authorize the taking of any property within its jurisdiction for the public use without the owner's consent is inherent in every government. In this State the right of the owner, as against the public, is protected only to the extent that his property cannot be taken or damaged for public use without just compensation, which, when not made by the State, must be ascertained by a jury. The right to take or authorize the taking of private property for public use is legislative in its nature, and property can only be taken by exercise of the power directly by the General Assembly or by delegation in express terms or by necessary implication. The General Assembly may delegate the power to take private property for public use to municipal corporations, governmental subdivisions or public service corporations, and also to public officers, boards of trustees, managers of State institutions, county commissioners and other like boards and officers. (15 Cyc. 574.) It is lawfully delegated to administrative boards or officers, such as school officers, commissioners of highways, county boards, park commissioners or others exercising similar powers. The General Assembly might lawfully delegate to the utilities commission the right and duty to exercise or compel the exercise of the power of eminent domain to secure public safety, and, although not expressly conferred, the right and duty were necessarily implied, because if the peti-

tioner had no right to take property for the proposed change it would be powerless to comply with the order, and the General Assembly could not have contemplated or intended such a result. The commission having been empowered to make the order, everything essential to require and insure compliance with it was necessarily included. The construction of the statute contended for would defeat its intention and practically destroy the power of the commission to secure the public safety by abolishing grade crossings in any case involving the taking of additional property."

It was contended by the property owners in that case that they were not served with notice of the hearing before the Public Utilities Commission in which the certificate of convenience and necessity was issued, and that they were not served with a copy of the order of the commission and were given no opportunity to contest the order before the commission or to appeal therefrom. In answer to this contention, the court said: "The order of the commission did not amount to an appropriation of the defendants' property or any interest in it, which could only be accomplished by the filing of a petition and the ascertainment and payment of compensation for the property, so that there was no violation of the due process provision of the constitution. The defendants were not deprived of their property, nor of any interest therein, by the mere making of the order, which neither gave the petitioner any interest in or right to possession of the property. The General Assembly has unlimited power to take private property for public use, or to authorize it to be taken, upon making compensation, reserving to the property owner the right to contest the question whether the proposed use is public or private and whether the power is to be exercised for the purpose for which it was conferred. (*Chicago and Northwestern Railway Co.* v. *Galt*, 133 Ill. 657; *Ligare* v. *City of Chicago*, 139 id. 46.) There was no more necessity of notify-

ing the defendants of the hearing or serving them with a certified copy of the order than there would be in any case of notifying owners of land that the power of eminent domain was about to be conferred upon a corporation or administrative board or officer where the exercise of the power would require the taking of their property."

Here, the objection is the same as in the cited case. The validity of section 18 is challenged because no provision is made for actual notice, to the property owners within the development area, of the hearing before the commission for a certificate of convenience and necessity. What was said in the *Cavanagh case* is a complete answer to this contention of appellee.

The sole question arising on the hearing before the commission under section 18 is whether the redevelopment corporation has complied with the requirements which the legislature has made conditions precedent to the right of the redevelopment corporation to enter upon a redevelopment program and to acquire property for that purpose by voluntary conveyance and by the exercise of the power of eminent domain. No property or property rights of the landowners are taken, nor are such rights affected by anything which occurs in the hearing before the commission for a certificate of convenience and necessity. Such property owners are not entitled to notice of such hearing before the commission. The failure of the act to provide for such notice does not constitute a denial of due process of law.

The same contention is made with reference to the application of the Neighborhood Redevelopment Corporation to the Redevelopment Commission, under section 42, for a certificate authorizing it to acquire specific property by eminent domain. No such notice to the property owners is necessary to comply with the requirements of due process of law. No property is taken in this proceeding under section 42. The property rights of the landowners are in no-

wise affected. This is merely another of the steps required by the statute authorizing a redevelopment corporation to exercise the power of eminent domain. After such certificate is issued and suit is filed for the taking of property by the exercise of the power of eminent domain, the court, in such suit, will determine for itself whether or not the steps have been taken and the precedent conditions met by the redevelopment corporation, authorizing it to exercise such power. The steps required to be taken precedent to the right to the exercise of the power are legislative questions. The question of whether such steps have been taken is judicial.

As already observed, the legislature has authorized redevelopment corporations to exercise the right of eminent domain upon certain precedent conditions prescribed by the act. The court, in any condemnation suit instituted by a redevelopment corporation, will determine whether these conditions precedent to the exercise of the right have been complied with. The hearing, therefore, in the suit in which it is sought to acquire property by eminent domain, gives to the property owner the right and the opportunity to be heard upon all questions on which he is entitled to a hearing and fulfills all the requirements of due process of law.

Further contentions of appellee are: that the act fails to fix sufficient standards and, for that reason, constitutes an unconstitutional delegation of legislative power; that section 26 of the act is in conflict with certain other provisions therein; that the classification contained in section 24 is arbitrary and unreasonable, and that the act violates section 13 of article IV of the constitution in that it constitutes an attempt to amend the Business Corporation Act, in violation of said section. The above contentions have been fully and carefully considered. It is unnecessary to extend this opinion by a detailed discussion of such questions. In our opinion these contentions are without merit.

The court below erred in the entry of the decree appealed from. That decree is reversed and the cause is remanded to the circuit court of Cook county with directions to sustain the motion of the defendants to dismiss, and to enter a decree dismissing the complaint and cause of action for want of equity.

*Reversed and remanded, with directions.*

Mr. JUSTICE MURPHY, dissenting:

I can not agree with the majority opinion holding the act constitutional. The basis of my dissent shall be limited to a discussion of that part of the act which confers upon Neighborhood Redevelopment Corporations organized under the act the authority to exercise the power of eminent domain.

The power to take private property without the owner's consent, with compensation, is a power that in the first instance rests exclusively in the State. Any exercise of it is, as was stated in *Department of Public Works* v. *Ryan,* 357 Ill. 150, "fraught with grave responsibilities." In the act in question, the legislature has undertaken to confer that power upon the Neighborhood Redevelopment Corporations which the majority opinion correctly refers to as private corporations. Before such delegation of power may be given judicial approval, it must appear that such private agency is going to devote the land taken pursuant to such power to a purpose in which there is a public use. If the purpose for which the land is to be devoted is purely private, then the delegation of power can not be sustained, for it would be but an authorization giving one agency engaged in a private enterprise the power to take the property of another individual without the latter's consent.

It is my view that lands taken by eminent domain pursuant to the act will be subjected to a purpose in which there is no right to public use. Section 13 of article II of the constitution directs that "private property shall not

be taken nor damaged for public use without just compensation." This limitation provision has been construed as prohibiting the taking of private property for any purpose other than for a public use. In determining whether the purpose for which the Neighborhood Redevelopment Corporations proposed to use the land is for a public use, it is necessary to note the distinction made in the cases between a purpose which is to the advantage of the public and a purpose which is for a public use.

In *Gaylord* v. *Sanitary Dist.* 204 Ill. 576, on page 584, it was said: "It is also the settled doctrine of this court that to constitute a public use, something more than a mere benefit to the public must flow from the contemplated improvement. The public must be to some extent entitled to use or enjoy the property, not as a mere favor or by permission of the owner, but by right."

In *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Polecat Drainage Dist.* 213 Ill. 83, it was said: "Private property cannot be condemned by a person or corporation on the ground that the general prosperity of the State or community would be promoted thereby, if the title to the property so taken is to be vested in such person or corporation as private property, to be used and controlled as other private property. To be public the use must concern a community, as distinguished from an individual or any particular number of individuals, and then, to authorize the condemnation of private property, the law must control the use to be made of the property, after it has been condemned, to the end that it shall be devoted to the public purpose which alone could justify the taking of the same from the owner without his consent."

A common example of the exercise of the power by a private corporation is the taking of land by a railroad company for its right of way. Unquestionably the public derives two benefits by the construction of a railroad: One from increased transportation facilities, the other the right

that every individual has to use the railroad for the transportation of persons and property. The public derives an advantage from the establishment of an industrial plant in the community, but no one would contend that such public advantage would warrant the taking of private property by eminent domain.

The purpose for which the act was designed was to remedy the conditions specified in section 2. It may be said that the primary purpose is to rehabilitate slum areas. The act contemplates that this may be accomplished by improving the living conditions in such areas. It may result in the destruction and removal of the buildings, destroying the housing facilities that are in such areas, and the erection of new buildings thereon. It may be accomplished by the repair and improvement of the buildings already in such area. I do not doubt but what the public will derive an incidental benefit by the removal of such conditions, but my view is that this act goes much farther. It not only contemplates the removing of the conditions but also directs the use of the property, after the conditions have been removed, into private hands for private purposes. The statute provides that the charter of the Neighborhood Redevelopment Corporation shall not extend longer than sixty years, but the act does not contemplate that for the full period of sixty years there shall be a constant and continuous effort to eradicate the evils of slum conditions in the area and to keep it clear from such conditions. Section 26 of the act provides, that "Anything in this act to the contrary notwithstanding, the supervision and regulation of the Neighborhood Redevelopment Corporation by the Redevelopment Commission, shall without more cease and determine whenever the Redevelopment Commission shall find that the redevelopment of the development area of the Neighborhood Redevelopment Corporation has been achieved." It is possible that such purpose may be achieved within three or five years and if it is achieved at any time

less than the sixty-year period, then the right to regulate and prevent the recurrence of slum conditions has been terminated, and any incidental benefit which the public may derive from the clearance of slum areas is thereby terminated. However, such termination does not end the use of the land which has been taken by eminent domain. For that part of the sixty-year period which remains, the Redevelopment Corporations may proceed with the management of their property and the handling of it the same as any other private corporation handles its property. This, it seems to me, is a private purpose.

The power of eminent domain can not be exercised for both a public and private use. My view is that the riddance of certain property of the conditions attached to slum areas is but an incidental benefit to the public, and that it is not for a public use, but conceding the majority opinion to be correct in that regard, then there is the further proposition that the act authorizes the taking of land by the exercise of eminent domain, which, under the opinion, is a public use, but under section 26 this purpose may be adjudged to have been achieved and then for the remainder of the sixty-year period the corporation owns, manages and controls the property for its own private benefit. There is no time after the corporation has achieved the purpose and been discharged from control when the public or any individual or group of individuals may assert any right directly related to the use for which the property was taken. It is conceivable that the corporation may be discharged from control within five years from the date of its organization, and if so, then for fifty-five years it is privileged to own, operate and manage its property for private benefit and to the exclusion of the public. The public use must be coextensive with the purpose for which the property is to be condemned.

Attention is called to the fact that the act directs that a part of the property acquired by the corporation shall

be devoted to park purposes. This is limited to one tenth of the area included in the development area. There is no question but what the power of eminent domain may be exercised to acquire lands for park purposes but there is no provision in the law for acquiring a tract of land, one tenth of which is to be used for the use of the public as a park, and the remaining nine-tenths to be used by a private corporation for purely private purposes. The power of eminent domain, as conferred by the act, is so interwoven with the purposes for which it was enacted that the act can not be sustained if the section granting the power of eminent domain is stricken. For the reasons stated, I am of the opinion that the act should be held invalid.