**ROBINETTE et al. v. CHICAGO LAND CLEARANCE COMMISSION et al.**

No. 50 C 68.

United States District Court, N. D. Illinois, E. D.

June 26, 1951.

Heber T. Dotson, Chicago, for plaintiffs.

Ivan A. Elliot, Atty. Gen. of Ill., and Wilson & McIlvaine, Chicago, Ill., for defendants.

CAMPBELL, District Judge.

This action involves a large slum clearance project on Chicago's south side, along Cottage Grove Avenue between 31st and 35th Streets, known as Redevelopment Project No. 1. The defendants in the action are: (1) The Chicago Land Clearance Commission (hereinafter referred to as the "Commission"), a municipal corporation organized pursuant to the Blighted Areas Redevelopment Act of 1947, ch. 67½, Ill.Rev.St. 1953, § 63 et seq.; (2) The Illinois State Housing Board (hereinafter referred to as the "Board"), an administrative agency of the State of Illinois created by ch. 32, Ill.Rev.St.1931, § 5, and carrying out certain powers under the Blighted Areas Redevelopment Act; (3) The New York Life Insurance Company (hereinafter referred to as "New York Life"), a mutual life insurance company organized and existing pursuant to the insurance laws of the State of New York.

Plaintiffs' amended complaint consists of two counts: Count I seeks to have the Blighted Areas Redevelopment Act declared unconstitutional and its enforcement by defendants enjoined; Count II seeks damages under the Civil Rights Act, 8 U.S.C.A. §§ 41, 43 and 47(3).

The Board and the Commission answered both counts. New York Life answered Count I and moved to dismiss Count II. Subsequently, the Commission moved for judgment of dismissal of both counts on the pleadings, and New York Life moved for judgment of dismissal of Count I on the pleadings, which motions are now before the Court for disposition on the briefs of the parties.

Specifically, Count I alleges that plaintiffs are owners of land lying within a certain area which the Commission, with the approval of the Board and the City of Chicago, found to be a "slum or blighted area" and designated for redevelopment; that the property owned by plaintiffs possesses great value; that defendants threaten to condemn said land and demolish plaintiffs' homes; that the Blighted Areas Redevelopment Act, pursuant to which the defendants have done and are doing the acts complained of, violates the Fifth, Seventh and Fourteenth Amendments to the Constitution of the United States, and Article II, §§ 2 and 13, Article III and Article IV, §§ 20 and 22 of the Illinois Constitution, S.H.A.; that, further, defendants threaten to convey the land taken through condemnation to New York Life for the construction of a private project pursuant to a contract entered into between the Commission and New York Life; that, in furtherance of their scheme to take plaintiffs' property, defendants have taken steps to acquire such property through the exercise of the power of eminent domain or voluntary conveyance, which steps have included sending form letters to certain plaintiffs and others asking that representatives of the Commission be permitted to inspect their property for the purpose of evaluating it, and other form letters to other plaintiffs and other persons offering given amounts for certain parcels of the property; that plaintiffs have resisted the attempt to acquire their property; that defendants, in the name of the Commission, have filed a condemnation suit in the Circuit Court of Cook County whereby they seek to condemn and acquire the subject property; that the Commission proposes to acquire the property and resell it to New York Life at a $9,000,000 loss; that plaintiffs' remedies at law are inadequate; that, unless this Court grants injunctive relief, plaintiffs will suffer irreparable injury in the form of multiplicity of suits, depreciation of the value of their property, interference with the enjoyment of their property, and the lowering of plaintiffs' "moral standard".

Count II of the amended complaint is based on the theory that the activities of the Board and the Commission and the signing of a certain contract of redevelopment by the Commission and New York Life, were carried on under color of a state statute (the Blighted Areas Redevelopment Act) which is invalid under the Fifth and Fourteenth Amendments to the Constitution of the United States.

■ At the outset it is necessary to determine whether a one-judge court has the authority to dispose of the pending motions. Ordinarily, where a plaintiff seeks to enjoin the enforcement of a state statute as being violative of the Federal Constitution, the judge to whom the case is assigned must convene a three-judge court even for the purpose of dismissing the complaint for failure to state a claim upon which relief could be granted, the theory being that this constitutes a disposition of the case on the merits. However, this rule is subject to the exception that, where, as here, jurisdiction is founded solely upon the alleged presence of a federal question, the suit may be dismissed without convening a three-judge court, if it is made to appear that the federal question claims are insubstantial, either because they are obviously without merit or because they have been disposed of adversely to plaintiffs by previous decisions of the Supreme Court.

"The District Judge recognized the rule that if the court was warranted in taking jurisdiction and the case fell within section 266 of the Judicial Code, a single judge was not authorized to dismiss the com-

plaint on the merits, whatever his opinion of the merits might be. Ex parte Northern Pacific Ry. Co., 280 U.S. 142, 144, 50 S.Ct. 70, 74 L.Ed. 233; Stratton v. St. Louis S. W. Ry. Co., 282 U.S. 10, 15, 51 S.Ct. 8, 75 L.Ed. 135. But the provision requiring the presence of a court of three judges necessarily assumes that the District Court has jurisdiction. In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented. 'A substantial claim of unconstitutionality is necessary for the application of section 266.' Ex parte Buder, 271 U.S. 461, 467, 46 S.Ct. 557, 559, 70 L.Ed. 1036; Louisville & Nashville R. Co. v. Garrett, 231 U. S. 298, 304, 34 S.Ct. 48, 58 L.Ed. 229. That provision does not require three judges to pass upon this initial question of jurisdiction.

"The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint. Mosher v. City of Phoenix, 287 U.S. 29, 30, 53 S.Ct. 67, 77 L.Ed. 148; Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, 53 S.Ct. 549, 550, 77 L.Ed. 1062. The question may be plainly unsubstantial, either because it is 'obviously without merit' or because 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' Levering & Garrigues Co. v. Morrin, supra; Hannis Distilling Co. v. [City of] Baltimore, 216 U.S. 285, 288, 30 S.Ct. 326, 54 L.Ed. 482; McGilvra v. Ross, 215 U.S. 70, 80, 30 S.Ct. 27, 54 L.Ed. 95." Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 4, 78 L.Ed. 152.

The Court, as it will demonstrate in the succeeding paragraphs, is of the opinion that the instant action falls within the purview of the rule laid down in the Poresky case.

In brief, plaintiffs contend that the Blighted Areas Redevelopment Act is violative of the Federal Constitution in the following particulars: (1) The Act authorizes the Commission and the Board to determine that the area in which plaintiffs' property is situated is a slum and should be redeveloped, without affording notice to plaintiffs, or an opportunity to be heard, or judicial review of the determinations, all in violation of the due process clause of the Fourteenth Amendment; (2) The Act is not uniform in its applicability to property of the same class, but rather depends for its operation upon the arbitrary determinations of the Board and the Commission; (3) The Act, in permitting the Commission to resell acquired land at less than the acquisition price, denies plaintiffs and other taxpayers equal protection of the laws in violation of the Fourteenth Amendment; (4) The Act violates the privileges or immunities clause of the Fourteenth Amendment; (5) The Act violates (a) the due process clause of the Fifth Amendment, (b) the clause of that Amendment prohibiting the taking of property without payment of just compensation, and (c) the Seventh Amendment, guaranteeing trial by jury in cases at common law involving more than $20.

In regard to plaintiffs' initial contention, i. e., that they should have been afforded notice, opportunity to be heard and judicial review of the finding by the administrative agency that the area is blighted and requires redevelopment, it should be noted that such administrative action is merely a preliminary step in the process of exercising the power of eminent domain. No property is taken in the proceeding, nor are the property rights of the landowners affected in any manner. The steps required to be taken precedent to the right to exercise of the power of eminent domain are legislative questions. The question of whether such steps have

actually been taken is judicial. Further, in any condemnation suit instituted by the administrative agency, the trial court can determine whether these conditions precedent to the exercise of the right have been fulfilled. The hearing, therefore, in the suit in which it is sought to acquire property by eminent domain, gives to the property owner the right and the opportunity to be heard on all questions on which he is entitled to a hearing and fulfills all the requirements of due process of law. Zurn v. City of Chicago, 1945, 389 Ill. 114, 59 N.E.2d 18. This view is confirmed by the United States Supreme Court in Rindge Co. v. Los Angeles, 262 U.S. 700, 709, 43 S.Ct. 689, 693, 67 L.Ed. 1186:

> " * * * And so construed this statute is not in conflict with the Fourteenth Amendment, either because it fails to provide for a hearing by the landowners before such resolution is adopted, or otherwise. The necessity for appropriating private property for public use is not a judicial question. This power resides in the Legislature, and may either be exercised by the Legislature or delegated by it to public officers. 'Where the intended use is public, the necessity and expediency of the taking may be determined by such agency and in such mode as the State may designate. They are legislative questions, no matter who may be charged with their decision, and a hearing thereon is not essential to due process in the sense of the Fourteenth Amendment.' Bragg v. Weaver, 251 U.S. 57, 58, 40 S.Ct. 62, 64 L.Ed. 135. 'That the necessity and expediency of taking property for public use is a legislative and not a judicial question is not open to discussion. * * * Neither is it any longer open to question in this court that the Legislature may confer upon a municipality the authority to determine such necessity for itself. * * * The question is purely political, does not require a hearing,

and is not the subject of judicial inquiry.' "

The foregoing also is a complete answer to plaintiffs' second contention, i. e., that the Act is not uniform in its applicability to property of the same class.

█ Plaintiffs' next contention, that the resale of the acquired land at less than the amount of the condemnation award or purchase price violates the equal protection clause of the Fourteenth Amendment, is similarly untenable. Undeniably, it has been clearly established that, where a state law is enacted for a public purpose, complaining parties will not be heard in a court of law where they seek to invoke the protections of the Fourteenth Amendment. Whether a particular line of action serves a public purpose is a practical question addressed to the law-making department of a state, and it would require a plain case of departure from every public purpose which could reasonably be conceived to justify the intervention of a court. Further, the end being legitimate, the means is for the legislature to choose. When public evils ensue from individual misfortunes or needs, the legislature may strike at the evil at its source. If the purpose is legitimate because public, it will not be defeated because the execution of it involves payments or incidental pecuniary benefits to private individuals or corporations. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 518, 57 S.Ct. 868, 81 L.Ed. 1245, and it cannot be seriously contended that the expenditures authorized under the Blighted Areas Act are for other than a public purpose. Eradication of blighted areas goes to the very essence of the public welfare. The physical and moral disintegration attendant upon the presence of slums challenges the continued and cohesive existence of the sovereign. The Supreme Court took a similar view in the case of City of Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274, where it upheld the constitutionality of the United States Housing Act.

█ Next, in order to establish that the Blighted Areas Act violates the privileges and immunities clause of the Fourteenth Amendment, plaintiffs must be able to point to the provision of the Federal Constitution or statutes by which the privileges or immunities are conferred. As has been demonstrated in the foregoing paragraphs, plaintiffs patently cannot comply with this requirement.

In view of the fact that this Court lacks jurisdiction of the action by reason of plaintiffs' failure to create a substantial federal question in their amended complaint, it becomes unnecessary to consider the allegations that the Blighted Areas Act is repugnant to the Illinois Constitution. It might be noted in passing, however, that all of plaintiffs' contentions have previously been decided adversely to them by the Supreme Court of Illinois in Zurn v. City of Chicago, 389 Ill. 114, 59 N.E.2d 18; Eckhoff v. Forest Preserve District, 377 Ill. 208, 36 N.E.2d 245; Owens v. Green, 400 Ill. 380, 81 N.E.2d 149; Krause v. Peoria Housing Authority, 370 Ill. 356, 19 N.E.2d 193; and Cremer v. Peoria Housing Authority, 399 Ill. 579, 78 N.E.2d 276.

█ In the light of what has been said in the foregoing paragraphs concerning the existence of a substantial federal question and the alleged violation of the Federal Constitution, it should be clear that plaintiffs have failed, in Count II of the amended complaint, to state a cause of action under the Civil Rights Act. Furthermore, two of the three sections of the Civil Rights Act relied upon by plaintiffs have no application to claims for alleged violations of property rights; and the third section is inapplicable for the reason that there is no allegation that Blighted Areas Act, or any course of action taken by any of the defendants pursuant thereto, discriminates against Negroes as a class.

Motions of defendants New York Life Insurance Company and the Chicago Land Clearance Commission for judgment of dismissal as to Count I of the amended complaint are granted, and the same is hereby dismissed for lack of jurisdiction. Motions of the same defendants to dismiss Count II of the amended complaint are granted, and the same is accordingly dismissed for failure to state a claim upon which relief can be granted.