(No. 33233.—

DAVID ZISOOK *et al.*, Appellants, *vs.* MARYLAND-DREXEL NEIGHBORHOOD REDEVELOPMENT CORPORATION *et al.*, Appellees.

*Opinion filed September 23, 1954.*

D'Ancona, Pflaum, Wyatt & Riskind, of Chicago, (Edgar Bernhard, and Edwin Goldberger, of counsel,) for appellants.

John J. Mortimer, Corporation Counsel, William H. Dillon, and Concannon, Dillon & Snook, all of Chicago, (Maynard I. Wishner, and Louis Bacon, of counsel,) for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

Plaintiffs, David and Tybe Zisook, challenged the constitutionality of the 1953 amendments to the Neighborhood Redevelopment Corporation Law by their complaint in the circuit court of Cook County, which sought to enjoin defendants, Maryland-Drexel Neighborhood Redevelopment Corporation, the city of Chicago, and the members of the Neighborhood Redevelopment Commission of the city of Chicago, from taking any action, incurring any obligations, or expending any funds under the authority of those amendments. Defendants' motions to strike the complaint, as amended, and to dismiss the cause were sustained. Plaintiffs elected to stand on their amended complaint, and appeal directly from a decree dismissing the action.

Plaintiffs are residents and taxpayers of the city of Chicago. The Neighborhood Redevelopment Commission was appointed under the Neighborhood Redevelopment Corporation Law, and the defendant Maryland-Drexel Neighborhood Redevelopment Corporation was formed on October 23, 1953, under that law. (Ill. Rev. Stat. 1953, chap. 32, pars. 550.1 *et seq.*) Maryland-Drexel Neighborhood Redevelopment Corporation is authorized by its charter to redevelop only "conservation areas" and not "slum and blighted areas." It filed with the Neighborhood Redevelopment Commission of the city of Chicago an application for approval of a development plan and for a certificate

of convenience and necessity. In its application it stated that it desired to redevelop an area in Chicago bounded by Cottage Grove Avenue on the west, Drexel Avenue on the east, Fifty-fourth Street on the north and Fifty-fifth Street on the south; that this development area was not yet a slum and blighted area but would become such unless redeveloped; that the area was a "Conservation Area," within the meaning of the Neighborhood Redevelopment Corporation Law, as amended, and was in need of redevelopment and conservation. It further stated in its application that it would exercise the right of eminent domain, if and when necessary to the proposed redevelopment plan, upon obtaining written consent to the development plan from the owners of 60 per cent or more of the area of land within the development area, and that it did not propose either to purchase, or to secure options to purchase, 60 per cent or more in area of the land within the development area.

The Redevelopment Commission ordered that the application be docketed in its conservation docket as Conservation Application No. 1, and that the commission proceed upon the application in accordance with the provisions of the Neighborhood Redevelopment Corporation Law, as amended. On December 11, 1953, the city council of Chicago appropriated $1000 for the expenses of the Redevelopment Commission in processing and proceeding upon applications for redevelopment of "conservation areas."

The constitutionality of the Neighborhood Redevelopment Corporation Law of 1943 was sustained in *Zurn* v. *City of Chicago*, 389 Ill. 114 (1945). The scheme of the statute is set forth in that case and need not be repeated here. In 1953, the General Assembly amended the law in several material respects. Amendments to section 3-4 extended the definition of "Development Plan" to include a plan for the redevelopment of a "Conservation Area," defined in section 3-12 as "an area in which the structures

in fifty per cent or more of the area are residential having an average age of thirty-five years or more. Such an area is not yet a Slum or Blighted Area as defined in the Blighted Areas Redevelopment Act of 1947, but such area by reason of dilapidation, obsolescence, or deterioration, or illegal use of individual structures, overcrowding of structures and community facilities, conversion of residential units into non-residential use, deleterious land use or layout or any combination of these factors may become such a Slum and Blighted Area."

Section 42(1)(c) originally required as a prerequisite to the institution of condemnation proceedings that a development corporation should have acquired, by purchase or options, 60 per cent or more in area of the land within its development area. The 1953 amendments permit, as an alternative prerequisite, proof that the owners of 60 per cent or more in the area of land within the development area have assented to and agreed to be bound by the terms of the development plan of the redevelopment corporation as to themselves and their property. Sections 19, 30 and 31, providing for appeal to the circuit court and to the Appellate or Supreme Court were repealed in 1949, effective January 1, 1950, and section 30.01, providing for judicial review pursuant to the Administrative Review Act, was added. (Laws of 1949, p. 637.) And in 1953 the title of the act was broadened to include the prevention and conservation of slum and blight areas.

Plaintiffs contend that because of these material changes in the statute, our decision in the *Zurn case* is not controlling. They argue first that the 1953 amendments to the Neighborhood Redevelopment Corporation Law unlawfully delegate legislative powers to municipal Neighborhood Redevelopment Commissions without prescribing standards or rules to govern their determinations, and are so vague and indefinite as to threaten a denial of due process of law. The core of this contention is in the attack

made upon the definition of "Conservation Area" in section 3-12. This definition differs from the definition of a "Conservation Area" in section 3 of the Urban Community Conservation Act in that the conservation area there involved must not be less than 160 acres. That definition also includes two additional factors not mentioned in the present act: "decline of physical maintenance" and "lack of community planning." In *People ex rel. Gutknecht* v. *City of Chicago, ante,* p. 539, decided this day, we have held that the definition of "Conservation Area" in the Urban Community Conservation Act is not vulnerable to constitutional attack on the ground that it fails to prescribe adequate standards and guides. While the reasons there stated apply with like force to the definition of "Conservation Area" in the statute here involved, a further word is appropriate.

In the act now before us, and in the Urban Community Conservation Act, the General Assembly provided for the creation of agencies which are designed to check the decline of urban areas into slums. The Urban Community Conservation Act contemplates action by governmental agencies. This act authorizes a pattern of action by private agencies, called redevelopment corporations, under governmental supervision. The pattern of action which the amended statute provides for the prevention of slums has been held valid when applied to the elimination of slums. *Zurn* v. *City of Chicago,* 389 Ill. 114.

In neither case has it been questioned that urban areas exist which are deteriorating into slums; nor has it been suggested that the existence of such areas is not a legitimate governmental concern. Both attacks have centered upon the alleged inadequacy of the legislative effort to capture the elusive characteristics of the areas with which it is dealing. Here it is argued, with respect to each of the distinguishing attributes which the statutory definition includes, that it is not stated "how much dilapidation,"

"how much obsolescence," and so forth, is required. The point would have significance if the techniques of the accountant were applicable. But the combinations of factors which produce the result at which the legislation is aimed cannot be appraised with that degree of precision. The situation here is like that presented in *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581, in that the multitude of varying conditions to which the legislation is to apply makes mathematical certainty impossible in the fixing of standards. There an act was sustained which authorized the Department of Public Works to designate highways as freeways, and to limit access to them "when the safety and convenience of highway traffic will be promoted and the public interest subserved thereby." The arguments there advanced are applicable here.

Plaintiffs also argue that under section 24, as amended to cover conservation areas, the Redevelopment Commission is vested with unlimited discretion as to the size of a redevelopment area, which, in Chicago, shall not be "less than two city blocks nor more than 160 acres, * * * unless the Revelopment Commission, in the interests of the orderly Redevelopment of a Slum and Blight or Conservation Area, shall * * * authorize a reduction or increase of the Development Area." Reading this provision literally, plaintiffs say that the commission is empowered to reduce a development area to but a single structure or to increase it by any number of blocks it chooses.

The 1953 amendments added the words "or Conservation" to the quoted portion of section 24 and increased the maximum size of a redevolpment area from 80 to 160 acres. Apart from these changes, the section remains the same as when its validity was sustained in *Zurn* v. *City of Chicago,* 389 Ill. 114. It may be observed that in the sentence which follows the quoted provision the General Assembly has explained the meaning of its use of the words "in the interests of the orderly Redevelopment of a Slum

and Blight or Conservation Area" as follows: "It shall be in the interest of the orderly Redevelopment of a Slum and Blight or Conservation Area to increase or diminish the Development Area herein limited whenever the Development Areas of two or more Neighborhood Redevelopment Corporations operating or to operate in the same locality shall not encompass an intervening area or less than two city blocks, and the Redevelopment Commission in such instances shall by rule, pursuant to paragraph 2 of Section 25 of this Act, prescribe the conditions under which contiguity, and the extent thereof, shall be mandatory of the two or more Development Areas." It is manifest that Neighborhood Redevelopment Corporations have not been granted unfettered discretion with respect to the size of a redevelopment area but, on the contrary, are governed by precise standards.

Plaintiffs' next contention is directed at the definition of a "Development Plan." Section 3-4 defines at considerable length a development plan, enumerating fourteen requirements which may be included. Of these, twelve are for all practical purposes the same as those permissible in a conservation plan under the Urban Community Conservation Act. (Ill. Rev. Stat. 1953, chap. 67½, par. 91.12.) Attention is directed to the opening portion of section 3-4 stating that a development plan "may include but is not limited to" the fourteen items set forth with particularity. From this, plaintiffs make the bald assertion that there are no limitations whatever upon the kind of development plan for a conservation area which may be accepted and approved by the commission. Section 17, however, describes in great detail the requirements of a development plan. Section 3-4, as amended, defines a development plan far more fully than did the original definition which was summarily held free from the same attack now made. (*Zurn* v. *City of Chicago,* 389 Ill. 114, 133.) The contention is without merit.

Relying upon *Chicagoland Agencies, Inc.* v. *Palmer,* 364 Ill. 13, plaintiffs urge that the failure of the statute to prescribe the qualifications required of members of the Redevelopment Commission renders the law unconstitutional. Section 4 of the law (Ill. Rev. Stat. 1953, chap. 32, par. 550.4,) provides that a redevelopment commission shall consist of from three to five members, who are to be appointed by the mayor, with the advice and consent of the city council. Each member of the commission shall hold office for a term of two years. Vacancies are to be filled by appointment by the mayor, again with the advice and consent of the city council. No person holding stocks or mortgages in any Neighborhood Redevelopment Corporation, or who is in any other manner directly or indirectly pecuniarly interested in such corporation, or in the development undertaken by it, may be appointd as a member of, or be employed by, the Redevelopment Commission to whose supervision and regulation such corporation is subject. If any such member or employee voluntarily becomes so interested, his office or employment becomes vacant, *ipso facto.* Members or employees, who become so interested otherwise than voluntarily, are given ninety days to divest themselves of such interests, and upon their failure so to do their offices or employments become vacant. Members of the commission receive salaries fixed by the city council.

Although section 4 was not changed by the 1953 amendments, the question raised here, not being mentioned in the briefs or the opinion in the *Zurn case,* is open for consideration.

Plaintiffs point to no constitutional provision which requires that affirmative qualifications be affixed to an office such as this. There is none. An office created by statute may be filled in the manner the legislature prescribes. (*Groves* v. *Board of Education of the City of Chicago,* 367 Ill. 91; *People ex rel. Ahern* v. *Bollam,* 182

Ill. 528; *People ex rel. Akin* v. *Loeffler*, 175 Ill. 585.) Reference to *Department of Finance* v. *Cohen*, 369 Ill. 510, 515, makes it clear that the basis of decision in the *Chicagoland Agencies case* was a lack of adequate standards, and not some supposed requirement that the legislature must prescribe the qualifications for appointive office.

Plaintiffs' contention that the new method of judicial review which the amendments provide is grossly inadequate may be disposed of shortly. The argument is advanced here, as it was in the *Zurn case*, that the notice provisions of section 18, relating to the public hearing upon the development plan and the issuance or denial of a certificate of convenience or necessity, are inadequate. This issue was presented directly and decided adversely to plaintiffs in *Zurn* v. *City of Chicago*, 389 Ill. 114, 129-132. The statutory provisions are unchanged, and we adhere to our conclusions in that case.

In addition, plaintiffs stress the fact that review of the decisions of the Redevelopment Corporation, effective July 1, 1950, is to be pursuant to the Administrative Review Act. Plaintiffs characterize such review as "severely restricted, for the Court is limited to consideration of the record of proceedings before the Commission and cannot hear any new or additional evidence in opposition to the Commission's determinations." A complete answer to this contention is that the 1953 amendments effected no substanve change in the method of judicial review. Sections 19 and 30 of the original law each provided that no new or additional evidence could be introduced upon the review by the circuit court and that, in the event of failure to appeal from the order of the commission, there could be no trial of the merits of such controversy by any court to which application might be made to enforce such order of the commission or in any other judicial proceeding. Ill. Rev. Stat. 1949, chap. 32, pars. 550-19, 550-30.

Indeed, plaintiffs themselves recognize that no substantive change in judicial review was effected, submitting in their reply brief that "the amended review provisions must be considered in the light of the new definitions of crucial terms in the Act." It is clear that plaintiffs' entire argument on this point is predicated upon a theory which we have rejected,—that the new definitions involve an unlawful delegation of legislative power without definite standards. The method of judicial review prescribed by the statute is sufficient. See *Zurn* v. *City of Chicago*, 389 Ill. 114.

As originally enacted, section 42 of the Neighborhood Redevelopment Corporation Law provided that, before instituting condemnation proceedings, a Redevelopment Corporation was required to submit proof to the commission that it had acquired by purchase, or had secured options to purchase, 60 per cent or more or the land within the development area. This section was amended in 1953 to provide as an alternative that the corporation may submit proof that the owners of 60 per cent or more in area of the land within the development area have "assented to and consented to be bound by the terms and provisions of the Development Plan of the Neighborhood Redevelopment Corporation as to themselves and their property." Plaintiffs contend that section 42, as amended, improperly delegates legislative power to property owners.

What the General Assembly has done is to authorize redevelopment corporations to exercise the right of eminent domain upon certain prescribed conditions. (*Zurn* v. *City of Chicago*, 389 Ill. 114.) The conditions both as originally stated and as amended, appear designed to insure the likelihood that a plan can be successfully implemented before the power of eminent domain is permitted to be exercised. In so providing the legislature has not delegated its power to make the law. The legislature has made the law, has provided for the creation and regulation of Re-

development Corporations, has provided what powers such corporations may and may not exercise, and has provided that they may exercise the power of eminent domain upon certain prescribed conditions. It is settled that the legislature may lawfully enact a law, the operation of which depends upon a contingent event. This court has stated that "* * * nothing is better settled than that the operation and even remedial character of a perfect and complete law may, by virtue of limitations contained in the law itself, based upon contingent extrinsic matters, be enlarged, diminished, or wholly defeated. Such laws, though adopted absolutely and perfect in all their parts, yet by their own limitations they are applicable to a hypothetical condition of things only, and which may or may not ever happen. That it is perfectly competent for the legislature to pass such laws is shown by long legislative experience, and a decided weight of judicial authority." (*Home Ins. Co.* v. *Swigert,* 104 Ill. 653, 665.) To the same effect are *People* v. *McBride,* 234 Ill. 146, 177; *People ex rel. Deneen* v. *Simon,* 176 Ill. 165; *People ex rel. Grinnell* v. *Hoffman,* 116 Ill. 587. This distinction was noted in *People ex rel. Chicago Dryer Co.* v. *City of Chicago,* 413 Ill. 315, 321, upon which plaintiffs rely. Section 42 is not invalid for the reason urged.

The contention that the 1953 amendments authorize the taking of private property for a private use in violation of constitutional limitations is disposed of by our opinion in *People* v. *City of Chicago, ante,* p. 539, decided this day, which holds that the Urban Community Conservation Act does not authorize the taking of private property for a private purpose. Our conclusion there is decisive of the identical contention made here, which is supported by essentially the same arguments.

When the 1953 amendments were enacted, the title of the Neighborhood Redevelopment Corporation Law was

amended, by the addition of the words italicized, to read as follows: "An Act to provide for the *prevention and* eradication of slum and blight areas and the *conservation,* rehabilitation and rebuilding thereof through the medium of neighborhood redevelopment corporations with powers of eminent domain." By their final contention, plaintiffs assert that the amended title is insufficient to embrace the 1953 amendments because it does not suggest provisions relating to the conservation, rehabilitation and rebuilding of areas other than slum and blight areas. The nub of the contention is that the word "thereof" refers to slum and blight areas only, and there is therefore nothing in the title referring to the conservation, rehabilitation and rebuilding of conservation areas. In our opinion, the addition of the words "prevention" and "conservation" to the title enlarged it sufficiently to include the slum prevention *and conservation provisions incorporated in the body of the statute.*

What is required is that the title of an act fairly indicate the general subject and reasonably cover all the provisions of the act, so as not to mislead either the legislature or the public. (*People* v. *Roche,* 389 Ill. 361; *People* v. *Tallmadge,* 328 Ill. 210; *People* v. *Stacker,* 322 Ill. 232. See: *People* v. *City of Chicago, ante,* p. 539, decided this day.) As amended, the title of the act fairly expresses as one of its objectives the prevention of slums. The provisions of the statute with respect to conservation areas are clearly germane to that objective. The constitution does not require that the title of an act be expressed in the most precise phraseology. The amended title of the challenged statute would, we think, mislead no one.

The decree of the circuit court of Cook County is affirmed.

*Decree affirmed.*